## Commercial Properties, Inc. *v.* Peternel, Appellant.

Argued March 22, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frank L. Seamans,* with him *John H. Morgan, Edwin L. Klett, John B. Nicklas, Jr.,* and *Eckert, Seamans & Cherin,* and *McCrady & Nicklas,* for appellants.

*Paul G. Perry* and *Walter A. Koegler,* with them *Robert M. Brown,* and *Burgwin, Ruffin, Perry & Pohl,* for appellees.

OPINION BY MR. JUSTICE EAGEN, June 30, 1965:

In this mandamus action, the court below ordered the issuance of certain grading and building permits to the plaintiffs for the construction of a shopping center in Mt. Lebanon Township, Allegheny County. The township and residential intervenor-defendants appeal.

The facts are lengthy and require extended discussion.

The particular property involved is a tract of approximately 10 acres of land located in the Virginia Manor section of the Township of Mt. Lebanon at the intersection of Cochran and Greentree Roads. Virginia Manor Land Company (Manor), the legal title holder of the property, has entered into a contract of sale for the property with Southgate Plaza, Inc. (Southgate), for a consideration of $210,000, contingent upon the acquisition of necessary township approvals and permits for the construction of a shopping center on the land in question. Commercial Properties, Inc. (Commercial), is the duly authorized agent of Southgate for the purpose of constructing the said shopping center.

In 1948, a township zoning ordinance classified the present parcel of land as "Commercial"; in 1955, this classification was narrowed to "Neighborhood Shopping" (NS), which classification remained extant at all times relevant to the present action. (Either classification permits the proposed use as a shopping center.) However, on July 8, 1963, at a regular public meeting of the Board of Commissioners of Mt. Lebanon Township (Board), a proposed amendment to the zoning ordinance was introduced, changing the classification from NS to Residential (R-1), and a public hearing was scheduled for September 9, 1963 (which hearing was in fact held). On November 26, 1963, the Township Planning Commission (Commission) met, discussed the proposed amendment, and recommended that it not be adopted. Thereafter, the Board, on December 9, 1963, voted to table the proposed amendment, where it lay until June 8, 1964, at which time it was removed from the table and enacted as an ordinance.

In early April 1963, one Jennings, an officer of both Commercial and Southgate, met with the township manager, Finley, to determine the necessary procedure to be followed in order to erect the shopping center. He was told at that meeting that he was required to obtain "preliminary site plan approval" from the Commission, and to secure a grading permit under a separate grading ordinance before he could apply for a building permit. Shortly thereafter, Jennings filed copies of his plot plan with the Commission and appeared before them on April 23, 1963, to discuss obtaining their approval. At that meeting five objections were raised to the plot plan, which Jennings set about to remedy. The next meeting with township officials took place on the site proposed for development, at the suggestion of the township and in the presence of several abutting owners, on May 4, 1963. Further conversations and meetings ensued, during each of

which new objections were raised to the plot plan, until on June 25, 1963, the Commission voted not to approve the plot plan. As a result of this action and at the request of Jennings, a letter listing 16 objections to be overcome in order to secure approval was issued. Jennings then met with the township director of public works, Peternel, and one Williams, a township engineer, to discuss the objections and the manner of overcoming them. As a result, late in July (note that the proposal for rezoning had then intervened) a revised plot plan was given to Peternel, which plan was in fact approved by the township engineer as being in "technical compliance" with the local requirements.

A formal application for a grading permit, filed on August 7, 1963, was denied because it was not in triplicate, it was not prepared by a registered professional engineer, and it had no "specifications" attached. In the meantime, Jennings requested to be placed on the Board's agenda to obtain their approval of the site plan; but at their meeting the Board ignored his request and, in a move aimed directly at the plaintiffs, amended the grading ordinance (under which the plaintiffs had been proceeding) so as to make the securing of a building permit a prerequisite to obtaining a grading permit. Then, on August 30, 1963, the Board refused to issue a grading permit: because the Commission had not given approval, because no building permit had been obtained, and because they were "unsure" of the effect on the project of the proposed rezoning. Again, on September 20, 1963, Jennings was notified that, although they were in "technical compliance", no grading permit could issue until a building permit was secured, a performance bond filed, and approval obtained from the Department of Forests and Waters.

On November 26, 1963, plaintiffs applied for a building permit, but no formal action has ever been

taken thereon, apparently because of the present litigation, although it is admitted that "structurally" the permit could issue.

On October 18, 1963, this action in mandamus was instituted, requesting that the court direct the issuance of a grading permit to the plaintiffs for the land in question. Abutting and neighboring property owners, whose rights could have been affected by the decision in this case, were allowed to intervene. On January 8, 1964, a second amended complaint was filed, adding a separate count, requesting the court to direct the issuance of a building permit for the shopping center. At the close of the pleadings, a hearing was held and the court directed that both the grading permit and the building permit issue. It is the correctness of this order which is here challenged.

Initially, we observe that mandamus is an extraordinary writ which can issue only when plaintiffs have a clear legal right to the performance of a ministerial act by the defendant, whose duty it is to perform that act: *Verratti v. Ridley Township,* 416 Pa. 242, 206 A. 2d 13 (1965), and *Travis v. Teter,* 370 Pa. 326, 87 A. 2d 177 (1952). Mandamus will not lie to control the exercise of official discretion, but it will issue to compel the exercise of discretion or to prevent the arbitrary or fraudulent exercise thereof: *Garratt v. Philadelphia,* 387 Pa. 442, 127 A. 2d 738 (1956), and *Maxwell v. Farrell School District Board of Directors,* 381 Pa. 561, 112 A. 2d 192 (1955). And where plaintiffs have a clear legal right to the issuance of a building permit, then mandamus is the proper means to compel the officials to issue it: *Verratti v. Ridley Township,* supra, and *Lhormer v. Bowen,* 410 Pa. 508, 188 A. 2d 747 (1963). Thus, the question resolves itself into the simple matter of whether or not the plaintiffs had a clear legal right to the issuance of the requested permits.

We find it unnecessary to determine appellants' claim that they are bound by, and have a right to enforce, a restrictive agreement (made by the township and the present *legal* titleholder in 1948) between the township and a private landowner. While the court below so stated, such a contention was not the basis for decision, the court finding that plaintiffs here did not violate the terms of that agreement. We find support in the record for the court's factual determinations and no error of law in the conclusions drawn from the facts or in the interpretations attributed to the various restrictive provisions. Having complied with its provisions, the restrictive agreement could not have been a ground for refusal to issue the permits.

Appellants contend primarily that the plaintiffs acquired no "vested right" in the extant zoning classification, and that the proposal to rezone on July 8, 1963, before any formal application for a permit was filed, had the effect of cutting off any rights which plaintiffs might have acquired had they moved more quickly.

While, under ordinary circumstances, it is unquestionably true that a building permit[1] may be denied because its issuance would not be in conformity with a "pending" ordinance on the subject, this necessarily presupposes that the "pending" ordinance is a valid one. This is merely another way of stating the holding of *Lord Appeal*, 368 Pa. 121, 125-126, 81 A. 2d 533, 535 (1951), that a property owner is entitled to use his property in any way he desires as long as he does not "(1) violate any provision of the Federal or State Constitutions; or . . . (4) violate any laws or zoning or police regulations *which are constitutional.*" (Emphasis added.) It was there further said that "it

---

[1] While we speak in terms of building permits, the principles here enunciated apply with equal force to grading permits.

is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation *whenever they are . . . not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property:* [citing cases]." (Emphasis in original.)

In the opinion entered in support of the court's decision below, it was said, ". . . there is not the slightest doubt that the sole purpose of this [proposed rezoning] Ordinance was to prevent *these plaintiffs* from constructing the project they planned. . . . We think that plaintiffs have met their burden of proving the invalidity of this Rezoning Ordinance. . . . [T]he conduct of the Township officials in their relations with the plaintiffs and the action of the Township Commissioners in introducing the Rezoning Ordinance were not in good faith, but were contrived for the sole purpose of preventing the legal use by plaintiffs of their property, and therefore constituted 'arbitrary and unreasonable intermeddling with the private ownership of property,' which the Supreme Court has condemned in Medinger Appeal, [377 Pa. 217, 104 A. 2d 118 (1954)]. It is impossible to escape the conclusion that the Rezoning Ordinance here involved was ' "special legislation, unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that it was aimed at this particular piece of property" ': Shapiro v. Zoning Board of Adjustment, 377 Pa. 621, 628." (Emphasis in original.)

If this conclusion is justified by the record, then there is no doubt that the introduction of the ordinance could have no effect upon the plaintiffs' right to the permits sought, and we think the record does amply support this conclusion. In so deciding, we impute no personal vindictiveness to the township officials who apparently were striving to maintain the

high character of their bailiwick and to represent the desires of their constituency. But, while their motives may have been of the highest sort, their course of action was ill conceived. When plaintiffs set out to construct a shopping center on their property, they had every right to do so. But at each step of the way they were met with obstructionism and hastily erected barriers. As plaintiffs overcame each objection or complied with each request, township officials were busily erecting new barriers. Plans revised to meet objections were met with additional objections, and requests for approval were summarily cast aside. While plaintiffs were attempting to secure a grading permit as a prerequisite to obtaining a building permit, the township changed its requirements to make the securing of a building permit a prerequisite to obtaining a grading permit. And so the circular pursuit went.

In an effort to show the proposed rezoning was not spot-zoning, appellants assert that the property involved was a 10 acre tract. But this ignores the fact that this tract was proposed to be developed as a single, integrated unit. It makes no difference whether it is a ¼ acre lot or a 50 acre industrial complex area which is the subject of the rezoning. If it is aimed at preventing a theretofore legal use of an integrated unit owned by one common interest, the action cannot be supported as valid rezoning. In so saying, we do not mean to stagnate zoning classifications. However, under the peculiar facts of this case, it cannot be said that the purpose was for the health, safety and general or moral welfare of the community. The sole purpose, as found by the court below, was to prevent a then lawful use of this land by these plaintiffs.

*Verratti v. Ridley Township,* supra, and *Lhormer v. Bowen,* supra, are inapposite to the present case. Each of those cases dealt with a valid ordinance, and the question was whether or not the ordinance was

"pending" at the time of application for a permit. As we view the present case, the question here is whether a "pending" ordinance was valid, without regard to the actual date of application.

On August 30, 1963, the township, by a letter from Finley, stated that the Board had not acted upon plaintiffs' petition for site plan approval and the issuance of a grading permit because (1) there had been no final recommendation from the Planning Commission, (2) a building permit had not been secured, a prerequisite according to the amended grading ordinance discussed above, and (3) the zoning status might be changed by amendment.

The amended grading ordinance, as applied to these plaintiffs, suffers from the same fatal infirmity as the proposed rezoning ordinance, and is therefore inapplicable. The proposed rezoning could not affect these plaintiffs. Therefore, the lack of site plan approval is the only matter left regarding this barrier. Unfortunately, the township zoning ordinance has not been included in the record. Such being the case, we adopt the following, unchallenged finding of fact by the court below:

"The only provision in the Township Zoning Ordinance relating to site plan approval in an NS District is contained in Article IX, Section 2-9, which provides: 'The location, site plan and general character of the development [must] be approved by the Board of Township Commissioners.'

"There is no provision in the Ordinance defining a site plan nor specifying any criteria by which the Board of Township Commissioners is to exercise its function of approving or disapproving 'the location, site plan and general character of the development.'"

Thus, we see that in fact the zoning ordinance never required "site plan" approval by the Planning Commission, and the lack thereof could not be prejudicial

to plaintiffs' position. Furthermore, zoning ordinances, being in derogation of a property owner's constitutional rights, must be strictly construed (*Cleaver v. Board of Adjustment*, 414 Pa. 367, 200 A. 2d 408 (1964), and cases cited therein), and "certain and definite and valid standards for zoning must be prescribed . . . in the zoning ordinance": *Cleaver v. Board of Adjustment*, 414 Pa. at 374, 200 A. 2d at 413. See also, *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587 (1957), and 8 McQuillin, Municipal Corporations §25.62 (3d ed. rev. 1957). The lack of definite criteria upon which the Board must base its decision vitiates the entire requirement, and the Board's "site plan" approval, therefore, was not a prerequisite to the issuance of a grading permit.

Thereafter, on September 20, 1963, Peternel (the Director of Public Works, whose function it is to issue grading permits) informed plaintiffs that, while in "technical compliance", the grading permit could not issue until a bond had been posted, a building permit secured, a permit from the Department of Forests and Waters secured, and an undisclosed "legal question" resolved. The question of the building permit in this context has been discussed above, as well as the "legal question" (or questions, as the case seems to be). In regard to the bond, the ordinance requires the posting of a bond in the amount of 25% of the estimated cost of the grading project. It seems as though there was some dispute as to what the cost would be, but this question was not resolved until after the institution of this suit. The question is now moot, however, the township having waived this objection by accepting a subsequently tendered bond, apparently sufficient to comply with the requirement. As for the permit from the Department of Forests and Waters, the record discloses that traditionally it has been the function of the township to secure same, and the lack thereof cannot

prejudice plaintiffs' position. Any permit which issues as a result of this decision will necessarily be contingent upon Department of Forests and Waters approval, which approval will, we presume, be sought in the normal course of administrative procedure by the township officials. Its present lack is not a ground for the denial of a grading permit.

No formal action or official communication has occurred in regard to plaintiffs' application for a building permit. However, we agree with the court below that plaintiffs have complied with all valid requirements and the building permit should issue. The comments made above with regard to the invalidity of the proposed rezoning are equally applicable here, and it presents no bar to the construction of plaintiffs' shopping center. Neither does the restrictive agreement of 1948. Furthermore, we concur in the construction by the court below of the "parking space" provision of the zoning ordinance and in the factual determination that plaintiffs' plan complies therewith, a determination well supported by the record. Appellants also raise the requirement of prior site plan approval, but we have disposed of that contention above. Finally, appellants contend that certain proposed uses of various portions of the shopping center would be in violation of the zoning ordinance. In this regard, we again approve of the comments of the court below which point out that the requirement of use and occupancy permits thereunder provides "ample machinery" for the protection of the township. While not approving of the proposed uses, the township could still issue the building permit and allow the shopping center to be built, still reserving the right to restrict the use to which it is to be put. It is plaintiffs' duty to find suitable tenants who meet the requirements of the "use" provisions. That plaintiffs have improperly proposed unacceptable tenants is not a ground for the

316 

denial of the building permit. The future tenancy is a problem for future regulation.

Order affirmed.