612 A.2d 578

**WARNER COMPANY, Appellant,**

v.

**ZONING HEARING BOARD OF TREDYFFRIN TOWNSHIP**
**and Tredyffrin Township and St. Peter's Church in the**
**Great Valley and Great Valley Coalition, Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 4, 1992.

Decided June 24, 1992.

610

John F. Stoviak, for appellant.

John D. Snyder, III, for appellee Tredyffrin Tp.

Ronald C. Nagle, for appellees St. Peter's Church and Great Valley Coalition.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

CRAIG, President Judge.

The Warner Company, owner of the Cedar Hollow Quarry, appeals from an order of the Court of Common Pleas of Chester County which denied an appeal by Warner of a Tredyffrin Township Zoning Hearing Board (board) decision which upheld the validity of Ordinance No. HR–135, adopted by the Board of Supervisors on December 18, 1989.

Ordinance No. HR–135 amended the zoning ordinance of Tredyffrin Township by adding a new clause to Article 2, section 201.B defining "quarrying operations". The ordinance also adds a new subsection to Article 17–A, section 1702A which regulates quarry operations (amendments). Pursuant to the amendments, quarry operations in Tredyffrin Township are a use permitted by special exception in Planned Industrial Park (PIP) districts.

The issues in this case are as follows: (1) whether the Noncoal Surface Mining Conservation and Reclamation Act (Noncoal Act) [1] preempts the township ordinance; (2) whether the ordinance unlawfully restricts Warner's constitutional right to continue and expand a lawful pre-existing nonconforming use; (3) whether the ordinance constitutes invalid special legislation; (4) whether the ordinance imposes setbacks which are unreasonable, arbitrary and invalid; and (5) whether the ordinance which designates the quarry as a use permitted by special exception is illegal and invalid.

Warner has operated the quarry since at least 1929. The quarry, which extends into adjoining Whiteland Township, occupies one of Tredyffrin township's two PIP districts. An

1. Pennsylvania Noncoal Surface Mining Conservation and Reclamation Act, Act of December 19, 1984, P.L. 1093, *as amended,* 52 P.S. §§ 3301–3326.

office complex is located in the other PIP district. St. Peter's Church in the Great Valley, established in 1740, is located in East Whiteland Township. However, the church's rectory, meeting rooms and a portion of the church cemetery are located in Tredyffrin township.

In 1939, the township enacted its first zoning ordinance. Since the enactment of the zoning ordinance, Warner has operated the quarry as a lawful pre-existing nonconforming use. Warner operates the quarry subject to a comprehensive state regulatory scheme administered by the Pennsylvania Department of Environmental Resources (DER).

In June 1982, Warner submitted an application to DER for an expansion of its mine drainage permit. DER issued the permit, which contains 36 special conditions, on January 14, 1988.

In August, 1988, the Great Valley Coalition and the church presented to the township board a petition to amend the zoning ordinance to establish quarrying districts in the township. In December, 1989, the board of supervisors adopted Ordinance No. HR–135. Warner challenged the validity of the ordinance before the board which, in a decision issued on September 27, 1990, upheld the validity of Ordinance No. HR–135. Warner appealed the board's decision to the Court of Common Pleas of Chester County, which affirmed the decision of the board, and this appeal followed.

### 1. Section 16 of the Noncoal Act

The first issue in this case is whether section 16 of the Noncoal Act preempts the township ordinance. The Noncoal Act confers on the Commonwealth of Pennsylvania authority to regulate surface mining activities. Section 16 of the Noncoal Act provides:

**Local ordinances:** Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code, all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Com-

monwealth, by this enactment, hereby preempts the regulation of surface mining as herein defined.

In *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 451 A.2d 1002 (1982), the Supreme Court construed a provision in the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31 (SMCRA), which is similar to section 16 of the Noncoal Act.[2]

In that case, a landowner challenged the validity of a township zoning ordinance adopted pursuant to the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201 (MPC), which imposed new setback requirements applicable to existing quarry operations. The township's ordinance preceded the effective date of the SMCRA by 18 days. The landowner contended that the SMCRA, which required less stringent setbacks, took precedence over the setback requirement imposed by the township's zoning ordinance.

The Supreme Court determined that, according to the language set forth in the SMCRA, SMCRA neither preempted nor superseded the township's ordinance. The court defined terms in section 17 of the SMCRA which are virtually identical to the language contained in section 16 of the Noncoal Act. The court distinguished the meaning of the terms "superseded" and "preempted".

The term 'superseded,' contained in the first sentence of [the] section, . . . ordinarily refers to the displacement of something that already exists, not something that may come into existence.

The term 'preempts,' . . ., ordinarily refers to an act which precludes action on the same subject by another in the future. *Id.,* 499 Pa. at 86, 87, 451 A.2d at 1005.

---

**2.** Section 17 of the SMCRA provides:

Except with respect to zoning ordinances, all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining operations as herein defined.

The court determined that the SMCRA did not supersede the challenged ordinance because the ordinance became effective before the SMCRA.

In *McClimans v. Board of Supervisors of Shenango Township*, 107 Pa.Commonwealth Ct. 542, 529 A.2d 562 (1987), this court reviewed a challenge to a township zoning ordinance which regulated surface mining. This court, relying on the language set forth in *Miller & Son Paving, Inc.*, determined that the SMCRA did not supersede the challenged ordinance because the township enacted the ordinance before the effective date of the SMCRA.

In *Nalbone v. Borough of Youngsville*, 104 Pa.Commonwealth Ct. 623, 522 A.2d 1173 (1987), a landowner challenged two ordinances enacted by the borough as amendments to the existing zoning ordinance. The ordinances designated a district in the borough where oil and gas wells could be drilled and operated, and also required operators to obtain a conditional use permit for the drilling. The landowner asserted that the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, 58 P.S. § 601.101–601.605, preempted local efforts to regulate the oil and gas field.[3]

The landowners contended that the ordinances were not, in substance, zoning ordinances, but rather an attempt by the borough to regulate an area preempted by the comprehensive provisions of the Oil and Gas Act. This court determined that both ordinances regulated land use, which is one of the primary purposes of zoning regulations.

■ In the present case, according to *Miller & Son Paving, Inc.*, and *McClimans*, because the township, pursuant to the

3. Section 602 of the Oil and Gas Act, 58 P.S. § 601.602 provides as follows:

Except with respect to ordinances adopted pursuant to the Act of July 31, 1968 (P.L. 805, No. 247), known as the Pennsylvania Municipalities Planning Code and the Act of October 4, 1978 (P.L. 851, No. 166), known as the Flood Plain Management Act, all local ordinances and enactments purporting to regulate oil and gas well operations regulated by this act are hereby superseded. The Commonwealth, by this enactment, hereby preempts the regulation of oil and gas wells as herein defined.

MPC, enacted its zoning ordinance before the effective date of the Noncoal Act, the Act does not supersede the ordinance. The issue is whether the Noncoal Act preempts the challenged ordinance. Hence, we will review the amendments to determine whether they regulate Warner's surface mining operations, as that term is defined in the Noncoal Act,[4] and are therefore preempted or, whether the amendments regulate land use, a legitimate exercise of the township's powers under the MPC.

Section 1702A(6)(c) of the ordinance requires specific buffer and berm requirements. A landscaped buffer strip, 100 feet in width, is required at any adjacent parcel listed on the National, State, or a local Register of Historic Places, any zoning district boundary line or the right-of-way of any public street. The storage of overburden is not permitted in the buffer strip. The ordinance also requires construction of earthen berms, of a designated height, within the buffer areas.

Special Conditions No.'s 18, 23 and 26 of Warner's DER permit address landscaping and berm construction. Specifically, Warner must submit a grading and planting plan which DER must approve before construction of berms may commence.

Section 1702(6)(e) of the ordinance establishes procedures for reclamation upon cessation of quarrying operations. However, section 7(c) of the Noncoal Act, 52 P.S. § 3307(c), requires an operator to submit a detailed plan for the reclamation of land affected to DER. According to section 8(a) of the Noncoal Act, 52 P.S. § 3308(a), DER is not authorized to issue a permit unless the "reclamation plan contained in the application can be accomplished as required by this act and regulations." Additionally, DER's Special Condition No. 40 contains

---

4. " 'Surface mining.' The extraction of minerals from the earth, from waste or stockpiles or from pits ... by removing the strata or material that overlies ... or otherwise exposing and retrieving them from the surface, including, but not limited to, ... quarrying and leaching and all surface activity connected with surface or underground mining, including, but not limited to, exploration, site preparation, entry, tunnel, drift, slope, shaft and borehill drilling and construction and activities related thereto; ...."

specific grading instructions for the reclamation of overburden storage areas.

Ordinance Section 1702A(6)(d) regulates the storage of overburden. The height of overburden piles is limited to 35 feet. Additionally, the stockpiles are required to be stabilized with grass or stabilization fabric. However, Special Condition No. 40 of the permit specifically addresses reclamation of the overburden storage area.

Ordinance Section 1702A(6)(f) requires dikes, barriers or structures to control the drainage from the operation.

■ Surface mining, as defined in section 3 of the Noncoal Act, 52 P.S. § 3303, includes *all* surface activity connected with the mining. Those surface activities integral to surface mining necessarily include the removal of overburden, the construction of buffers and berms and the reclamation of the affected land. Sections 1702A(6)(c), (d), (e) and (f) of the township's ordinance attempt to regulate surface activities— respectively, buffers and berms, overburden storage, reclamation and drainage structures—which the Noncoal Act and Warner's permit also specifically address. Hence, in accordance with section 16 of the Act, the amendments that attempt to regulate Warner's surface mining operations are preempted by the Act.

■ We note that Ordinance Section 1702A(6)(b) imposes setback requirements, and 1702A(6) and 1702(A)(6)(g) establish quarrying operations as a use permitted by special exception in the PIP district. Because setback requirements and the designation of uses permitted by special exception are traditional land use regulations, those sections are not preempted by the Act.

### 2. Continuation and expansion of a pre-existing nonconforming use

■ Initially, Warner contends that, as a nonconforming use, the quarry may continue to operate despite the enactment of zoning amendments which make the use unlawful. Warner relies on *Pennsylvania Northwestern Distributors, Inc. v.*

*Zoning Hearing Board,* 526 Pa. 186, 584 A.2d 1372 (1991). In that the case, the court held that a zoning ordinance which requires the amortization and discontinuance of a lawful preexisting nonconforming use is confiscatory and unconstitutional.

However, unlike the ordinance in *Pennsylvania Northwestern Distributors,* the ordinance in this case does not prohibit quarrying operations. Rather, section 1702A(6) permits quarrying operations as a special exception.

■ Additionally, Warner contends that, in accordance with *Cheswick Borough v. Bechman,* 352 Pa. 79, 42 A.2d 60 (1945), the natural expansion of the quarrying operation is permitted as of right. In *Cheswick,* operators of a sand and sand loam business sought to expand their operations. In determining that the business could legally expand, the court stated:

> The business carried on was the excavation of loam and sand loam. It is not essential that the use, as exercised at the time the Ordinance was enacted, should have utilized the entire tract. To so hold would deprive [the owners] of the use of their property as effectively as if the Ordinance had been completely prohibitive of all use. *Id.,* 352 Pa. at 82, 42 A.2d at 62.

However, unlike the present case, *Cheswick* did not involve an extension into setbacks. Additionally, the natural right of expansion is not unlimited. A municipality has a right to impose reasonable restrictions on the expansion of a nonconforming use. *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township,* 67 Pa.Commonwealth Ct. 183, 186, 446 A.2d 716, 718 (1982).

In *Appeal of Eureka Stone Quarry, Inc.,* 115 Pa.Commonwealth Ct. 1, 539 A.2d 1375 (1988), *petition for allowance of appeal denied,* 520 Pa. 599, 552 A.2d 253 (1988), this court considered a quarry owner's challenge to a zoning ordinance which established setback requirements. When the setback provisions were adopted, the quarry became dimensionally nonconforming. Although the quarry operator held two permits issued by DER which would have allowed the quarry to

extract stone within the township's setbacks, this court determined that the owner did not have a right to natural expansion of its dimensional nonconformity.

■ The doctrine of natural expansion does not apply where the activity for which the property is used is permitted in the zone, but there is a dimensional, space, lot size, structural, design, or aesthetic nonconformity. *Miller & Son Paving, Inc.* In this case, as a special exception, the quarry is a permitted use in the district. Hence, an expansion into setbacks is not permitted.

### 3. Special Legislation

Warner contends that the ordinance which regulates quarry operations violates Article III, Section 32 of the Pennsylvania Constitution which prohibits a governing body from enacting legislation which singles out a person or entity for particularized or special treatment.

■ Initially, we note that this case is distinguishable from those cases involving a vested right. In *Gallagher v. Building Inspector, City of Erie,* 432 Pa. 301, 247 A.2d 572 (1968) and *Yocum v. Power,* 398 Pa. 223, 157 A.2d 368 (1960), the Supreme Court held that where a zoning applicant has secured a building permit, the applicant has acquired a vested interest in the permit, which a planning authority cannot circumvent by subsequently enacting an ordinance prohibiting the applicant's planned construction. In this case, the issuer of the permit, DER, is not the same entity which is attempting to curtail Warner's activities. Thus, the permit issued by DER does not amount to a vested right.

In *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 211 A.2d 514 (1965), prospective purchasers of a piece of property approached township officials to determine the necessary procedure to be followed in erecting a shopping center. Thereafter, the following events occurred:

> When Plaintiffs set out to construct a shopping center on their property, they had every right to do so. But at each step of the way they were met with obstructionism and

hastily erected barriers. ... While plaintiffs were attempting to secure a grading permit as a prerequisite to obtaining a building permit, the Township changed its requirements to make the securing of a building permit a prerequisite to obtaining a grading permit. *Id.*, 418 Pa. at 312, 211 A.2d at 519.

Before the plaintiff could obtain the proper permits, the township rezoned the tract to prohibit shopping centers. The court determined that the township's action constituted spot zoning, enacted solely for the purpose of preventing the plaintiffs from using their land for a lawful use.

Unlike *Commercial Properties, Inc.*, the township in this case is not preventing Warner from using its land for quarrying purposes. Additionally, an ordinance which affects only certain tracts of land does not necessarily constitute spot zoning. Warner has the burden of proving that the differential treatment is not justified upon consideration of the health, safety, morals or general welfare of the community. *Seeherman v. Wilkes–Barre City Zoning Hearing Board*, 42 Pa.Commonwealth Ct. 175, 400 A.2d 1334 (1979).

In *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township, Zoning Hearing Board*, 93 Pa.Commonwealth Ct. 96, 500 A.2d 1253 (1985), a case similar to this one, the township amended its zoning ordinance to create a mineral recovery district. The mineral recovery district included an existing quarry which had been in operation since 1925 as a nonconforming use. The amendment also rezoned additional property for expansion of the quarry and adopted regulations applicable to quarry operations.

Thereafter, the quarry operator proposed to extend its quarry operations within the newly created mineral recovery district. A group of citizens challenged the expansion contending that the amendments to the zoning ordinance constituted special legislation and spot zoning.

This court acknowledged that the land owned by the quarry operator and included in the newly created district was treated differently than any other tract in the township. However,

the court determined that sufficient justification existed for treating the land differently.

The court reasoned that because no other quarrying operations existed in the township, the township did not act arbitrarily in rezoning the operator's tract as a mineral recovery district. The court took into account the topography, location and characteristics of the tract in determining that the amendment did not constitute spot zoning.

As in *Lower Allen Citizens Action Group*, hearings were held in this case to consider the effect of the amendments on the quarry and surrounding community. The amendments seek to protect quarrying operations, recognized by this court as a non-objectional use of land, and township residents. Thus, in accordance with *Lower Allen Citizens Action Group*, the rezoning of Warner's quarry does not constitute special legislation.

### 4. Setback provisions

Warner contends that, in accordance with *Longenecker v. Pine Grove Landfill, Inc.,* 117 Pa.Commonwealth Ct. 176, 543 A.2d 215 (1988), the township cannot enact setback provisions which are stricter than those imposed by the state.

In *Longenecker,* the township issued a zoning permit for the operation of a sanitary landfill to the landowner. DER also issued the landowner a state permit for the operation of a landfill. Thereafter, the township enacted an ordinance requiring a one-half mile setback from places of human burial for all landfill operations. The landowner, whose proposed site was located within one-half mile of a cemetery, challenged the validity of the ordinance.

This court determined that the provisions of the Solid Waste Management Act[5] superseded the township ordinance. The court relied on section 105(h) of the Act, 35 P.S. § 6018.105(h) which provides that the issuance of a certificate of public necessity supersedes "any and all local laws which would

5. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

preclude or prohibit the establishment of a hazardous waste treatment or disposal facility...."

The court stated that the imposition of setbacks is a zoning concept. The township, which did not have a comprehensive plan or zoning ordinance, enacted the setback provision pursuant to its police powers. Because the township did not enact the ordinance as a zoning ordinance in accordance with the MPC, the court determined that the ordinance was invalid. However, the court specifically stated that the Solid Waste Management Act "does not prohibit the enactment of *appropriate* zoning regulations." (Emphasis in original) *Id.*, 117 Pa.Commonwealth Ct. at 179, 543 A.2d at 216.

In the present case, section 1702A(6)(b) of the township's ordinance provides that no mining or excavation shall be permitted within 300 feet of: (1) any zoning district boundary line; (2) the right-of-way of any public street; (3) any parcel listed on the National, State or any local Register of Historic Places; (4) any cemetery; (5) any stream, lake or other natural body of water; (6) any residence; or (7) any property line. The Noncoal Act requires a 100 foot setback from any public street, right-of-way, cemetery, stream or body of water. Additionally, a 300 foot setback is required from any occupied dwelling house, commercial or institutional building, public building, school or community or institutional building or public park.

Unlike *Longenecker*, the township in this case enacted the setback provisions as a zoning ordinance in accordance with the MPC. Accordingly, part of *Longenecker* is distinguishable from the present case.

Warner also contends that the setbacks are excessive and arbitrary. In *Miller & Son Paving, Inc.*, the court upheld the validity of setbacks applicable to quarries. The ordinance increased the setback from 100 feet from all boundaries to 200 feet from all property lines, and 300 feet from all roads. The court stated that although the setbacks required by the SMCRA are relevant and competent evidence related to the need for stringent setback requirements, their existence in the statute does not automatically satisfy the owner's burden of

proving that the setbacks imposed by the township are arbitrary or capricious. *Id.* 499 Pa. at 89, 451 A.2d at 1006.

In this case, the township took into consideration the possibility of a mine collapse, as occurred in another township, and noise and dust associated with quarrying in determining appropriate setbacks. In this case, we agree with the trial court that Warner has failed to establish that the setbacks imposed by the township are not related to the public health, safety, morals and general welfare of the community.

### 5. Special Exception

Finally, Warner contends that the ordinance seeks to limit its right to continue operating the quarry as a nonconforming use by establishing quarrying operations as a use permitted by special exception. Section 1702A(6) of the ordinance authorizes quarrying operations as a special exception in PIP districts. A special exception is not an exception to a zoning ordinance but a use which is permitted, unless it would adversely affect the community. *Heck v. Zoning Hearing Board for Harvey's Lake Borough,* 39 Pa.Commonwealth Ct. 570, 397 A.2d 15 (1979). When a special exception is granted, the use is regarded as a conforming use. *Appeal of Barefoot,* 437 Pa. 323, 263 A.2d 321 (1970).

As the court stated in *Jenkintown Towing Service,* a nonconforming use is not entitled to greater rights than that afforded to a conforming use. Hence, by reclassifying the quarry as a permitted use, by special exception, the township is not thereby limiting Warner's right to continue quarrying operations.

Warner also contends that, because section 1702A(6)(g) requires Warner to obtain a permit for the operation of its quarry from the zoning officer, the township is impermissibly requiring Warner to obtain a permit for the continuation of a legal nonconforming use. However, as previously stated, the township is not attempting to prohibit continuation of the use.

Additionally, in *Nalbone*, this court determined that an enactment which required all persons to obtain a conditional use permit for the drilling of oil or gas wells constituted a zoning ordinance. The court held that conditional uses, which are analogous to special exceptions, are traditional zoning devices, and are properly enacted by a township in accordance with the MPC to regulate land use.

As previously stated, sections 1702A(6)(c), (d), (e) and (f) of the township's ordinance attempt to to regulate surface mining as that term is defined in the Noncoal Act. Hence, those amendments are preempted in accordance with section 16 of the Noncoal Act.

However, section 1702A(6)(b) which imposes setback requirements and sections 1702A(6) and (g) which allow quarrying operations as a special exception in PIP districts upon issuance of a permit are not preempted by the Act. Those sections regulate land use, a legitimate exercise of the township's powers under the MPC.

We note that section 1702A(6)(a) of the township's ordinance requires a quarry operator to comply with permits or approvals issued by DER, or any other local, state or federal agency which has jurisdiction. This section does not impose standards which are greater than those already required by the Noncoal Act. Hence, section 1702A(6)(a) is valid.

KELLEY, J., dissents.

## ORDER

Now, June 24, 1992, the order of the Court of Common Pleas of Chester County, No. 90–08571, dated August 1, 1991, is reversed in part and affirmed in part.

Sections 1702A(6)(c), (d), (e) and (f) of Ordinance No. HR–135 are invalid.

Sections 1702A(6), (a), (b) and (g) of Ordinance No. HR–135 are valid.