**SOUTHEASTERN CHESTER COUNTY REFUSE AUTHORITY, Appellant**

v.

**ZONING HEARING BOARD OF LONDON GROVE TOWNSHIP and London Grove Township.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2006.
Decided May 5, 2006.

Roger E. Legg, Parkesburg, for appellant.

Andrew J. Bellwoar, Chester Springs, for appellees.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Southeastern Chester County Refuse Authority (SECCRA) appeals from the July 26, 2005, order of the Court of Common Pleas of Chester County (trial court), which affirmed the decision of the Zoning Hearing Board of London Grove Township (ZHB) to deny SECCRA's validity challenge and request for a variance. We affirm.

SECCRA is a municipal authority that operates a landfill in London Grove Township (Township) on eighty acres in the Township's Industrial Special Use (ISU) District. The landfill is non-conforming as to the Township zoning ordinance's perimeter setback requirement of 200 feet [1] and the maximum height requirement of forty feet. (ZHB's Findings of Fact, Nos. 1–3, 26–27.)

The existing landfill will be at its permitted capacity in approximately 2009; as a result, SECCRA has acquired adjacent properties in order to provide space for expansion. SECCRA has filed a permit application with the Department of Environmental Protection (DEP), seeking to expand its landfill onto sixty-seven of the acquired acres, of which thirty-seven acres actually will contain the landfill cell. SECCRA proposes to construct its landfill expansion with a perimeter setback of 100 feet and a maximum height of 140 feet. (ZHB's Findings of Fact, Nos. 13, 15, 30, 37.)

SECCRA filed a validity challenge with the ZHB, arguing that sections 1102.B and 1102.E of the Township's zoning ordinance, which establish the 200–foot perimeter setback and forty-foot maximum height requirements, are void for vagueness, effect

a confiscation of SECCRA's property, lack any basis in reason, are the result of poor planning and ostensibly prohibit SECCRA from using its property for a landfill. (ZHB's Findings of Fact, Nos. 79–80.) SECCRA also requested a variance.[2] (ZHB's Findings of Fact, No. 103.)

With respect to the validity challenge, SECCRA presented witnesses at the hearings who testified that its proposal would amount to no more than a continuation of present operations, with no discernible increase in traffic, no change in access, no change in parking, no conflict with the environment or neighboring agriculture and no alteration in the character of the neighborhood. However, the ZHB did not find these witnesses credible. (ZHB's Findings of Fact, No. 82.)

The Township presented credible testimony that the proposed expansion: (1) will increase truck traffic that will shorten the life of the roads and increase the likelihood of accidents, (ZHB's Findings of Fact, No. 83); (2) will adversely impact on-site woodlands, (ZHB's Findings of Fact, No. 84); (3) will detrimentally affect a perennial stream, aquifer and wetlands located near the proposed expansion, (ZHB's Findings of Fact, No. 85); and (4) will create slopes that are not characteristic of the neighborhood, (ZHB's Findings of Fact, No. 86).

With respect to the variance, SECCRA agreed that, by charging more, it could operate the proposed landfill in accordance with the zoning ordinance, but SECCRA believed that it would not be competitive with other landfills without a variance from the perimeter setback and maximum height requirements. However, the ZHB found that free competition among landfills

---

1. The perimeter setback requirement is only 100 feet if the property adjoins another ISU District tract. (ZHB's Findings of Fact, No. 97.)

2. SECCRA filed an "Application for Variance Coupled with a Challenge to Two Sections of the Zoning Ordinance." (Trial ct. op. at 4 n. 5.)

in Chester County does not exist because the Chester County Waste Flow Control Ordinance requires that municipal waste from the southern third of Chester County go to SECCRA. (ZHB's Findings of Fact, Nos. 8, 11, 103–05.) In addition, the ZHB found that: (1) there are no unique physical circumstances on the expansion property that prevent it from being used as zoned; (2) the setback and height requirements do not prohibit the use of the property as a landfill; (3) SECCRA was aware of the requirements when it acquired the property; and (4) due to its size, the landfill would be the predominant geographic feature in this area of the Township and would alter the essential character of the neighborhood. (ZHB's Findings of Fact, Nos. 107–09, 113–15.)

■ Based on these findings, the ZHB upheld the validity of the zoning ordinance and denied SECCRA's variance request. Relying on *Hydropress Environmental Services, Inc. v. Township of Upper Mount Bethel,* 575 Pa. 479, 836 A.2d 912 (2003), the ZHB rejected SECCRA's argument that the 200–foot setback and forty-foot maximum height requirements were preempted by DEP regulations at 25 Pa. Code § 273.202(a)(13) (prohibiting a landfill within 100 feet of a property line) and 25 Pa.Code § 273.234(g) (relating to landfill slope). The ZHB also denied SEC-

CRA's request for deemed approval of the variance under section 908(9) of the Pennsylvania Municipalities Planning Code (MPC),[3] rejecting SECCRA's argument that opposition hearings needed to be completed within 100 days. The ZHB explained that the 100–day requirement in section 908(9) of the MPC does not apply to validity challenges, and because SECCRA had combined its variance request with a validity challenge, the time limit was inapplicable in this case. SECCRA appealed to the trial court, which affirmed. SECCRA now appeals to this court.[4]

## I. Deemed Approval

■ SECCRA first argues that the ZHB erred in concluding that its variance request should not be deemed approved under section 908(9) of the MPC. We disagree.

Section 908(9) of the MPC provides, in pertinent part, as follows:

*Except for challenges filed under section 916.1* [relating to validity challenges] where the board fails to ... complete the required hearing as provided in subsection (1.2), [i.e., within 100 days of the first hearing held after completion of the applicant's case-in-chief,[5]] the decision shall be deemed to have been rendered in favor of the applicant

---

3. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10908(9).

4. This court's review in zoning cases where, as here, the trial court did not take any additional evidence is limited to determining whether the ZHB committed an error of law or an abuse of discretion. *De Cray v. Zoning Hearing Board,* 143 Pa.Cmwlth. 469, 599 A.2d 286 (1991). The ZHB abuses its discretion if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

5. Section 908(1.2) of the MPC provides that, unless the applicant consents, "[p]ersons opposed to the application shall complete the presentation of their opposition ... within 100 days of the first hearing held after the completion of the applicant's case-in-chief." 53 P.S. § 10908(1.2). SECCRA asserts that the Township completed its case opposing the variance request on September 29, 2004, *210 days* after March 3, 2004, the date of the first hearing held after SECCRA completed its case-in-chief. (SECCRA's brief at 22.)

unless the applicant has agreed in writing or on the record to an extension of time.

53 P.S. § 10908(9) (emphasis added).

Here, SECCRA filed an "Application for Variance *Coupled with* a Challenge to Two Sections of the Zoning Ordinance." (R.R. I at 4a) (emphasis added). In the application, SECCRA requested "a hearing" on its request for a variance and its validity challenge. (R.R. I at 5a.) At the initial hearing on November 6, 2003, SECCRA began its case-in-chief, indicating in its opening statement that it would be presenting evidence relating to both the validity challenge and the variance request.[6] (R.R. I at 94a–95a.) After presenting evidence on both matters, SECCRA completed its case-in-chief at the March 3, 2004, hearing. (R.R. III at 512a–13a.)

If SECCRA had presented evidence only with respect to its variance request, then its opponents would have been given 100 days to present evidence in opposition. However, SECCRA presented evidence in support of both the variance request *and* the validity challenge. Although section 908(9) of the MPC is clearly inapplicable to validity challenges, SECCRA would have this court rule that this section nonetheless limits opponents of the validity challenge to only 100 days in which to present evidence simply because it is combined with a request for a variance. Such a construction of section 908(9) of the MPC would be unreasonable. Thus, we conclude that, where an applicant makes both a variance request and a validity challenge in a single application and presents evidence relating to both in its case-in-chief, the 100–day requirement in section 908(9) of the MPC does not apply.

## II. Preemption

### A. *Hydropress*

SECCRA next argues that the ZHB erred in holding that, pursuant to *Hydropress*, DEP regulations do *not* preempt the setback and height requirements of the local zoning ordinance.

*Hydropress* involved a plurality opinion of our supreme court. Three justices[7] held that the Solid Waste Management Act[8] (SWMA) does not preempt a local ordinance regulating the utilization of sludge-derived products on land. The justices reasoned as follows:

> The Legislature must clearly express its intent to preempt a field in which it has legislated. The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or "indicate[] an intention on the part of the legislature that it should not be supplemented by municipal bodies." The consequence of a determination of preemption is severe. "If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation in that area is permitted." Recognizing the clarity with which an intent to preempt must be expressed by the Legislature and the significance of such a determination, "[w]e have found an intent to totally

---

6. We note that, in *Valianatos v. Zoning Hearing Board*, 766 A.2d 903 (Pa.Cmwlth.2001), a landowner sought a variance and also challenged the validity of the zoning ordinance; the matter was bifurcated by agreement of the parties. *Id.* In contrast, here, SECCRA did not seek to bifurcate the proceedings.

7. Justice Lamb wrote the Opinion Announcing the Judgment of the Court, joined by Chief Justice Cappy and Justice Nigro.

8. Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§ 6018.101–6018.1003.

preempt local regulation in only three areas: alcoholic beverages, banking and anthracite coal mining."

. . . .

The SWMA contains no express preemptive mandate. Just to the contrary, the primary legislative statement of the purposes of the SWMA ... is to "establish and maintain a cooperative State and local program...." This is the language of intergovernmental coordination and cooperation, not of preemption. *Hydropress*, 575 Pa. at 489–91, 836 A.2d at 918–19 (citations omitted). Three justices[9] did not accept this reasoning, stating that the pervasive state regulation in this specialized area, embodied in the SWMA, indicates a clear legislative intention to preempt the field from local regulation.

Our supreme court has indicated that a plurality opinion such as *Hydropress* has no precedential value. *Bilt–Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (2005). Therefore, to the extent that the ZHB treated *Hydropress* as binding precedent, the ZHB erred. However, after considering the case law of this court in the following section of this opinion, we conclude that this was harmless error because the ZHB properly held that DEP regulations do ***not*** preempt the setback and height requirements of the local zoning ordinance in this case.

## B. Commonwealth Court Case Law

■ This court has held that the SWMA preempts a local ordinance regulating the operation of a landfill. *Municipality of Monroeville v. Chambers Development Corporation*, 88 Pa.Cmwlth. 603, 491 A.2d 307 (1985). However, the SWMA does not preempt local zoning provisions that are consistent with basic land use planning principles promoting and protecting the public health, property values and aesthetics. *Sunny Farms, Ltd. v. North Codorus Township*, 81 Pa.Cmwlth. 371, 474 A.2d 56 (1984).

Here, the Township's setback and height requirements relate to land use, *see Warner Company v. Zoning Hearing Board*, 148 Pa.Cmwlth. 609, 612 A.2d 578 (1992) (stating that traditional land use regulations include setback requirements), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993), and promote the public health, property values and aesthetics. Because the setback and height requirements do not regulate the operation of a landfill, SWMA does not preempt those requirements.

## III. Substantial Evidence

■ SECCRA next argues that the record lacks substantial evidence to support the ZHB's conclusion that sections 1102.B and 1102.E of the Township zoning ordinance are valid and that SECCRA is not entitled to a variance. We disagree.

■ The ZHB found credible Dr. deLorimier's testimony that SECCRA could operate a profitable landfill that conformed to the Township's setback and height requirements. (ZHB's Findings of Fact, No. 72.) SECCRA argues that Dr. deLorimier's testimony was "incredible" because his testimony set forth the contradictory opinion that SECCRA would have to incur a capital cost of $18.68 per ton versus the $7.23 per ton it cost for the existing land-

---

9. Justice Castille wrote a concurring and dissenting opinion, joined by Justice Saylor and Justice Eakin. Justice Newman wrote a dissenting opinion, which does not address the issue of preemption.

fill.[10] (SECCRA's brief at 49–50.) However, questions of credibility are solely within the province of the ZHB, and the ZHB is free to accept or reject the testimony of any witness, in whole or in part. *Domeisen v. Zoning Hearing Board*, 814 A.2d 851 (Pa.Cmwlth.2003). Here, the ZHB accepted Dr. deLorimier's testimony, which constitutes substantial evidence to support the ZHB's conclusion that sections 1102.B and 1102.E are valid and that SECCRA is not entitled to a variance.

### IV. Validity Challenge

SECCRA also argues that sections 1102.B and 1102.E are invalid because they result in the arbitrary confiscation of SECCRA's property. We disagree.

■■■ Property owners have a constitutionally protected right to enjoy their property without governmental interferences. *Surrick v. Zoning Hearing Board*, 476 Pa. 182, 382 A.2d 105 (1977). However, a municipality may enact zoning ordinances reasonably restricting that property right in order to protect and promote the public health, safety and welfare under its police power. *Cleaver v. Board of Adjustment*, 414 Pa. 367, 200 A.2d 408 (1964). Because a zoning ordinance is presumed to be valid, one challenging a zoning ordinance has a heavy burden. *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975). Where the validity of a zoning ordinance is debatable, the legislative judgment of the governing body must control. *Bilbar Construction Company v. Board of Adjustment*, 393 Pa. 62, 141 A.2d 851 (1958).

■■■ In Pennsylvania, the constitutionality of the zoning ordinance is reviewed under a substantive due process analysis. *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors*, 507 Pa. 481, 491 A.2d 86 (1985). Under such analysis, the party challenging the validity of provisions of the zoning ordinance must establish that they are arbitrary and unreasonable and have no substantial relationship to promoting the public health, safety and welfare. *Shohola Falls Trails End Property Owners Association, Inc. v. Zoning Hearing Board*, 679 A.2d 1335 (Pa.Cmwlth.1996), *appeal denied*, 548 Pa. 651, 695 A.2d 788 (1997).

SECCRA first argues that the setback and height requirements in sections 1102.B and 1102.E of the Township zoning ordinance are arbitrary and unreasonable because the provisions apply to all uses within the ISU District, without any allowance for variation or exception based on differences in use. (SECCRA's brief at 58.) This is incorrect. Section 1102.B allows for a 50% reduction of the setback requirement by variance, special exception or conditional use, except along street or district lines. Section 1102.E allows for a height increase from forty to sixty feet by variance, special exception or conditional use. Thus, we are not persuaded by this argument.

■■■ SECCRA next argues that sections 1102.B and 1102.E are arbitrary and unreasonable because they deprive SECCRA of the use of 200 feet of property that borders street and district lines, amounting to sixteen of the sixty-seven acres involved here. (SECCRA's brief at 58.) However, this argument suggests that *any* setback requirement would be invalid because it would deprive the property owner

---

10. SECCRA's attorney attempted to establish an alleged inconsistency in Dr. deLorimier's testimony by means of cross-examination. (R.R. IV at 997a, 1001a, 1003a–07a, 1012a, 1026a.) However, when asked, Dr. deLorimier could not confirm all of the numbers used by SECCRA's attorney in his calculations. Apparently, Dr. deLorimier's questioning of the attorney's figures prompted the ZHB to reject SECCRA's allegation of inconsistency.

of the use of his or her property to the property line.[11] We cannot conclude that setback requirements are arbitrary and unreasonable simply because they restrict the use of the setback area.

SECCRA also argues that the forty-foot maximum height restriction in section 1102.E is unreasonable because it conflicts with DEP's landfill slope regulation at 25 Pa.Code § 273.234(g), which would allow a height of more than forty feet as long as the landfill's slope meets DEP's standard. (SECCRA's brief at 60.) Although landfill slope is somewhat related to landfill height, the landfill slope regulation at 25 Pa.Code § 273.234(g) does not actually address a landfill's maximum height. Thus, it is not clear to this court that DEP's regulation is in conflict with section 1102.E.[12]

 Finally, SECCRA asserts that two perennial streams on the property have deprived SECCRA of 600,000 to 700,000 tons of disposal capacity and that DEP regulations related to the streams have deprived SECCRA of more than twelve acres. (SECCRA's brief at 59.) However, neither the streams nor DEP regulations are relevant to the validity of the Township's setback and height requirements. Therefore, SECCRA cannot prevail on this argument.

## V. *Hertzberg*—Dimensional Variance

 Finally, SECCRA argues that it is entitled to a dimensional variance pursuant to *Hertzberg v. Zoning Board of Adjustment,* 554 Pa. 249, 721 A.2d 43 (1998). We disagree.

 One seeking a variance must establish that: (1) the zoning ordinance imposes unnecessary hardship resulting from unique physical conditions of the property; (2) a variance is necessary to enable a reasonable use of the property; (3) the asserted hardship was not self-inflicted; (4) the grant of a variance will not alter the essential character of the neighborhood, nor substantially or permanently impair appropriate use or development of the adjacent property, nor be detrimental to the public welfare; and (5) the requested variance represents the minimum variance that will afford relief and the least possible modification of the regulation. *Mitchell v. Zoning Hearing Board,* 838 A.2d 819 (Pa.Cmwlth.2003). In determining whether a zoning ordinance imposes unnecessary hardship in a dimensional variance case, courts may consider multiple factors, including the cost of strict compliance with the ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood. *Hertzberg.*

SECCRA acknowledges that it cannot prevail on its variance request as long as Dr. deLorimier's testimony is deemed worthy of belief. (SECCRA's brief at 71.) As indicated above, Dr. deLorimier essentially testified that SECCRA can operate the landfill at a profit while complying with the setback and height requirements of the ordinance. Thus, SECCRA failed to show that the ordinance imposes unnecessary hardship.

11. We note that, although SECCRA's setback area may not be used as a landfill, the setback area may have other uses related to the operation of the landfill.

12. Moreover, SECCRA's argument suggests that there can be no limit on the maximum height of a landfill as long as the landfill's slope meets DEP's standard. Certainly, SECCRA cannot prove that the maximum height restriction in this case is unreasonable by arguing that the only reasonable maximum height is no maximum height.

SECCRA also argues that, although the ZHB found that there is no competition among landfills, SECCRA needs to be competitive because federal courts have suggested that the Chester County Waste Flow Control Ordinance, which requires Chester County municipalities to dispose of municipal waste at in-state landfills, violates the Commerce Clause of the U.S. Constitution. *See Harvey & Harvey, Inc. v. County of Chester*, 68 F.3d 788 (3d Cir.1995), *cert. denied*, 516 U.S. 1173, 116 S.Ct. 1265, 134 L.Ed.2d 213 (1996). However, SECCRA concedes that the parties in *Harvey* settled the case, so that the federal courts have not finally ruled on the matter. (SECCRA's brief at 72.)

Accordingly, for all of the foregoing reasons, we affirm.

### ORDER

AND NOW, this 5th day of May, 2006, the order of the Court of Common Pleas of Chester County, dated July 26, 2005, is hereby affirmed.