IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ramez Ziadeh, Acting Secretary    :
of the Department of Environmental  :
Protection and Acting Chairperson of  :
the Environmental Quality Board,   :
                                   :
               Petitioner   :
                                   :
           v.             :   No. 41 M.D. 2022
                                   :   Argued:  September 14, 2022
Pennsylvania Legislative Reference  :
Bureau, Vincent C. DeLiberato, Jr.,  :
Director of the Legislative Reference  :
Bureau, and Amy J. Mendelsohn,   :
Director of the Pennsylvania Code   :
and Bulletin,                 :
                                   :
             Respondents  :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                      FILED:  January 19, 2023

          Before the Court are the preliminary objections (POs) of Respondents the Pennsylvania Legislative Reference Bureau (LRB), its Director Vincent C. DeLiberato, and Director of the *Pennsylvania Bulletin* and the Pennsylvania Code Amy J. Mendelsohn (collectively, LRB Respondents) to the Petition for Review in the Nature of a Complaint for Permanent and Peremptory Mandamus and for Declaratory Relief (PFR) filed in our original jurisdiction by Patrick J. McDonnell,

Secretary of Environmental Protection and Chairperson of the Environmental Quality Board (Secretary McDonnell).[1] Also before the Court are the POs of the Intervenors Speaker of the House of Representatives Bryan D. Cutler, Majority Leader of the House Kerry A. Benninghoff, and Chairman of the House Environmental Resources and Energy Committee Daryl D. Metcalfe (collectively, House)[2] to Secretary McDonnell's PFR. Finally, also before the Court is Secretary McDonnell's Verified Application for Expedited Special and Summary Relief (ASR). We dismiss the PFR, the POs, and the ASR as moot.

In a memorandum opinion that we filed in support of our order granting an Application for Relief in the Nature of a Preliminary Injunction (Preliminary Injunction Application), we summarized the relevant facts/procedural history of this case as follows:

> On February 3, 2022, Secretary McDonnell filed his [PFR] against [LRB Respondents]. [PFR] ¶¶12-13; *see also* April 20, 2022, Joint Stipulation of Material Facts by All Parties (4/20/22 Stip.) ¶¶2, 3, 4. The Pennsylvania Code and the *Pennsylvania Bulletin* are located within the offices of the LRB. [PFR] ¶13. The [PFR] alleges that on November 29, 2021, the Department of Environmental Protection (DEP), acting on behalf of the Environmental Quality Board (EQB), submitted to the LRB for publication in the *Pennsylvania Bulletin* the "Trading Program Regulation" (Rulemaking). [PFR] ¶35. Ms. Mendelsohn, although acknowledging submission of the

---

[1] When the PFR was filed, Secretary McDonnell was the Secretary of Environmental Protection and Chairperson of the Environmental Quality Board. However, his service in that office ended on July 1, 2022, and Acting Secretary Ziadeh has been substituted as Petitioner in this matter pursuant to Pa.R.A.P. 502(b). We continue to refer to Secretary McDonnell for ease of discussion.

[2] Our designation of Representatives Cutler, Benninghoff, and Metcalfe as "House" is for ease of reference only and does not imply that they are acting on behalf of the Pennsylvania House of Representatives as a whole.

2

Rulemaking, refused to publish it because the period during which the House of Representatives had to disapprove of the Rulemaking had not yet expired. *Id.* ¶36. On December 10, 2021, Secretary McDonnell again submitted the Rulemaking for publication. *Id.* ¶37. Ms. Mendelsohn and Mr. DeLiberato responded that the Rulemaking could not be published because the House of Representatives adopted a December 15, 2021 resolution disapproving the Rulemaking. *Id.* ¶38.

The [PFR] avers that the Offices of General Counsel and of the Attorney General approved the Rulemaking as to form and legality under the Commonwealth Attorneys Act[3] and the Commonwealth Documents Law,[4] on July 26, 2021, and November 24, 2021, respectively. *Id.* ¶¶31, 34. Further, the Independent Regulatory Review Commission (IRRC) approved the Rulemaking on September 1, 2021, pursuant to the Regulatory Review Act (RRA).[5] *Id.* ¶32. The [PFR] acknowledges that once the approvals were obtained, the General Assembly had time in which it could disapprove the Rulemaking. *Id.* ¶¶74, 75. Pursuant to Section 7(d) of the RRA, after review by the IRRC, the standing committee of either or both the House of Representatives and the Senate, within 14 days, may report to the House of Representatives or the Senate a concurrent resolution disapproving the regulation at issue. *See generally id.* ¶76. In this case, the Senate Environmental Resources and Energy Committee reported Senate Concurrent Regulatory Review Resolution 1 (SCRRR1) disapproving the Rulemaking on September 14, 2021. *Id.* ¶77. According to the [PFR], once SCRRR1 was reported from the Senate committee, the House of Representatives and the Senate had 10 legislative days or 30 calendar days, whichever is longer, to adopt SCRRR1. *Id.* ¶75. For its part, the Senate approved SCRRR1 on October 27, 2021, within the 10-legislative-day limitation.

---

[3] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§732-101-732-506.

[4] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102, 1201-1208, 45 Pa. C.S. §§501-907.

[5] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§745.1-745.14.

*Id.* ¶¶81-83. The House of Representatives, however, did not adopt SCRRR1 until December 15, 2021. *Id.* ¶89. Secretary McDonnell claims that the Rulemaking was approved by operation of law on October 14, 2021, because the House of Representatives failed to act on SCRRR1 within 10 legislative or 30 calendar days of September 14, 2021. *Id.* ¶88. In other words, the House of Representatives and the Senate must *concurrently* consider a standing committee's resolution, regardless of which chamber reports the resolution. The House of Representatives' failure to act within the statutory period resulted in the approval of the Rulemaking under Section 7(d) of the RRA by operation of law, and, therefore, the LRB Respondents improperly refused its publication. *Id.*

The [PFR] seeks mandamus relief, that is, an order directing publication of the Rulemaking in the *Pennsylvania Bulletin*. In the claim for declaratory relief, Secretary McDonnell requests an order declaring that the LRB Respondents' refusal to publish the Rulemaking is contrary to law, the Rulemaking must be published in the *Pennsylvania Bulletin* and the Pennsylvania Code, and the Rulemaking was deemed approved by the General Assembly. [PFR] at 24. Secretary McDonnell claims that the LRB Respondents' interpretation of Section 7(d) of the RRA, that the House of Representatives and the Senate review committee resolutions consecutively rather than concurrently, is incorrect.

Simultaneously with the filing of the [PFR], Secretary McDonnell filed [the ASR] setting forth allegations supporting his claim of a clear right to relief and entitlement to judgment as a matter of law. The [ASR] explains that expedited review by the Court was required because the Rulemaking provides for Pennsylvania's participation in the Regional Greenhouse Gas Initiative (RGGI). The RGGI requires electric generation plants (covered sources) located in participating states to purchase one allowance for each ton of carbon dioxide ($CO_2$) they emit. Each state participating in the RGGI establishes a declining $CO_2$ budget that effectively limits the total $CO_2$ that the covered sources are permitted to emit. The allowances are auctioned off quarterly by

4

RGGI, Inc., and participating states receive the proceeds from the auction. The Rulemaking provides that Pennsylvania's proceeds will be used in accordance with the Air Pollution Control Act (APCA)[6] and the DEP's regulations. In 2021, the participating states received $926 million from the allowance auctions. According to the [ASR], the LRB Respondents' refusal to publish the Rulemaking has delayed Pennsylvania's entry in the RGGI and resulted in a loss of approximately $162 million in auction proceeds and associated air pollution reduction.

The LRB Respondents filed an Answer opposing Secretary McDonnell's [ASR]. Summarizing, they observe that the parties have a fundamental disagreement in the interpretation of Section 7(d) of the RRA and the timing/procedure for General Assembly review of resolutions. The interpretation of Section 7(d) is an issue of first impression for this Court, and the Court's considered disposition of the issue is not amenable to expedited review. Secretary McDonnell does not have a clear right to relief regarding his interpretation of Section 7(d) of the RRA, so neither summary relief nor mandamus relief is appropriate.

The LRB Respondents filed [the POs] to the [PFR] asserting a demurrer. According to the [POs], Secretary McDonnell does not understand the legislative review process for resolutions because a committee may only report a resolution to its own chamber. If the committee's chamber votes to approve the resolution, it is submitted to the other chamber for consideration. Thus, consideration of resolutions is consecutive rather than concurrent.

On February 24, 2022, [the House] filed an Application for Leave to Intervene. Consistent with the Pennsylvania Rules of Civil Procedure, the House attached to its Application for Leave to Intervene its [POs] to the [PFR] and an Answer to Secretary McDonnell's [ASR]. In its [POs], the House objects to the [PFR] on the bases that (1) a controversy did not exist because Governor Tom Wolf vetoed SCRRR1, and the Senate had yet[, and

---

[6] Act of January 8, 1960, P.L. (1959) 2119, *as amended*, 35 P.S. §§4001-4015.

5

ultimately failed,] to override the veto; (2) an adequate remedy in the form of a declaratory judgment exists, and, therefore, Secretary McDonnell has failed to state a claim for mandamus; (3) Secretary McDonnell fails to state a claim for declaratory relief because the plain language of Section 7(d) of the RRA grants each chamber the longer of 10 legislative days or 30 calendar days to adopt a concurrent resolution either in the first instance upon reporting from that chamber's committee or upon referral from the other chamber; and (4) Secretary McDonnell's claims are barred by laches or waiver. The House asserts that Secretary McDonnell waited over three months before filing his [PFR] in this Court despite alleging that the Rulemaking was approved by operation of law on October 14, 2021. The House's Answer to Secretary McDonnell's [ASR] refers the Court to its supporting brief.

On February 25, 2021, [President Pro Tempore of the Pennsylvania Senate Jake Corman, Senate Majority Leader Kim Ward, Chair of the Senate Environmental Resources and Energy Committee Gene Yaw, and Chair of the Senate Appropriations Committee Pat Browne (collectively, Senate)[7]] sought leave to intervene. Like the House, the Senate attached a responsive pleading to the Petition: its Answer with New Matter and Counterclaims. The Counterclaims have taken this case in a new direction. The Senate's first Counterclaim is that Secretary McDonnell violated article II, section 1[8] and article III, section 9[9] of the Pennsylvania Constitution when he

---

[7] Our designation of Senators Corman, Ward, Yaw, and Browne as "Senate" is for ease of reference only and does not imply that they are acting on behalf of the Pennsylvania State Senate as a whole. In addition, although the Senate leadership has changed subsequent to the November 8, 2022 General Election, with the new parties substituted for the former members of the leadership, we continue to refer to the foregoing parties who sought intervention for ease of reference.

[8] Pa. Const. art. II, §1 states: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

[9] Pa. Const. art. III, §9 states:

**(Footnote continued on next page…)**

6

submitted the Rulemaking to the LRB for publication before the House of Representatives had time to consider SCRRR1. According to the Senate, Secretary McDonnell's action was an attempt to sidestep article III, section 9 and usurp the General Assembly's authority in violation of article II, section 1. The second Senate Counterclaim alleges that the Rulemaking is an *ultra vires* action in violation of the APCA. The APCA, although authorizing the DEP to promulgate regulations, sets forth bright-line limits on the DEP's powers. By sending the Rulemaking for publication, the DEP took significant legal action despite clear statutory prohibitions to the contrary.

The Senate's third Counterclaim asserts that the Rulemaking is an interstate compact or agreement, which is within the General Assembly's exclusive constitutional authority to enter. In addition to this power being constitutionally reserved to the General Assembly, Section 4(24) of the APCA specifically states that the DEP may formulate interstate air pollution control compacts or agreements *for submission to the General Assembly*. 35 P.S. §4004(24). In its fourth Counterclaim, the Senate alleges that the Rulemaking is a tax and that the imposition of taxes is within the exclusive authority of the General Assembly. The Senate recognizes that the APCA allows for the collection of fines, penalties, and fees, including fees to cover the direct and indirect costs of administering the APCA. Here, however, the Rulemaking amounts to a tax. The courts have held that a fee may constitute a tax where the revenue generated exceeds the costs reasonably necessary to operate the program. The Senate references the 2021-22 budget for the DEP of $169 million and notes

---

Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the questions of adjournment or termination or extension of a disaster emergency declaration as declared by an executive order or proclamation, or portion of a disaster emergency declaration as declared by an executive order or proclamation, shall be presented to the Governor and before it shall take effect be approved by him, or being disapproved, shall be repassed by two-thirds of both Houses according to the rules and limitations prescribed in case of a bill.

yearly participation in the RGGI could generate over $650 million. Finally, the Senate's fifth Counterclaim is that the DEP failed to comply with the Commonwealth Documents Law and the APCA because it failed to hold "in-person" hearings. The DEP held 10 virtual hearings and the virtual hearings do not satisfy the statutory requirement of "in-person" hearings.

The Court directed the parties to file an answer to the House and the Senate Applications for Leave to Intervene. Secretary McDonnell and LRB Respondents consented to the Applications and, therefore, the Court granted the Applications and accepted for filing the responsive pleadings attached thereto. On March 25, 2022, the Senate filed its Preliminary Injunction Application, seeking to enjoin Secretary McDonnell and the LRB Respondents from taking any further action to promulgate, publish, or otherwise codify the Rulemaking.

The Court issued a March 29, 2022, briefing schedule to move Secretary McDonnell's [ASR] and the LRB Respondents' and the House's [POs] before the Court for disposition.

\* \* \*

On April 23, 2022, the Rulemaking was published in the *Pennsylvania Bulletin* as the $CO_2$ Budget Trading Program.

\* \* \*

On April 25, 2022, after publication of $CO_2$ Budget Trading Program, *i.e.*, the Rulemaking, in the *Pennsylvania Bulletin*, several electric energy generation companies, a non-profit, and several unions filed an original jurisdiction action challenging the Rulemaking on the basis that it is an unconstitutional imposition of a tax, the APCA does not authorize the Rulemaking, the DEP failed to hold public hearings on the Rulemaking, and the Rulemaking is otherwise unreasonable. *See Bowfin KeyCon Holdings, LLC v. Pennsylvania Department of Environmental Protection* (Pa. Cmwlth., No. 247 M.D.

8

2022). Concurrently therewith, the *Bowfin* Petitioners filed an Application for Preliminary Injunction, seeking an order enjoining the implementation, administration, or enforcement of the Rulemaking.

*Ziadeh v. Pennsylvania Legislative Reference Bureau* (Pa. Cmwlth., No. 41 M.D. 2022, filed July 8, 2022), slip op. at 2-10 (emphasis in original and footnotes omitted).

As noted above, we ultimately granted the Senate's Preliminary Injunction Application in this case because the Senate had demonstrated a clear right to relief in its Counterclaims that the Rulemaking violates the separation of powers doctrine and usurps the General Assembly's authority to levy taxes. *See id.*, slip op. at 21-24, 31-34. Additionally, by July 25, 2022 order, we granted the Senate's Application to Vacate Automatic Supersedeas, confirmed our July 8, 2022 order granting the preliminary injunction, and noted that the preliminary injunction remains in effect.

Regarding Secretary McDonnells' declaratory judgment claims in the PFR, this Court has observed:

> Petitions for declaratory judgments are governed by the provisions of the Declaratory Judgments Act [(DJA)], 42 Pa. C.S. §§7531-7541. Although the [DJA] is to be liberally construed, one limitation on a court's ability to issue a declaratory judgment is that the issues involved must be ripe for judicial determination, meaning that there must be the presence of an actual case or controversy. Thus, the [DJA] requires a petition praying for declaratory relief to state an actual controversy between the petitioner and the named respondent.

> Declaratory judgments are not obtainable as a matter of right. Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying

9

within the sound discretion of a court of original jurisdiction. As the Pennsylvania Supreme Court has stated:

> The presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are essential to the granting of relief by way of declaratory judgment. . . .
>
> Only where there is a real controversy may a party obtain a declaratory judgment.
>
> A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

*Brouillette v. Wolf*, 213 A.3d 341, 357-58 (Pa. Cmwlth. 2019) (citations omitted).[10]

Likewise, with respect to the PFR's request for mandamus relief, this Court has explained:

> We next address [the landlord's] mandamus action as to the occupancy permits and conclude that this issue is moot because the units are uninhabitable.
>
> Although neither party argues the mootness of the issuance of the occupancy permits, we may *sua sponte* raise the issue of mootness as "courts cannot 'decide moot or abstract questions, nor can we enter a judgment or

---

[10] *See also Department of Public Welfare v. Kallinger*, 615 A.2d 730 (Pa. 1990) ("AND NOW, . . . the Court, *sua sponte*, dismisses this appeal as moot."); *Battiste v. Borough of East McKeesport*, 94 A.3d 418, 424 (Pa. Cmwlth. 2014) ("[W]e may *sua sponte* raise the issue of mootness as 'courts cannot "decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given."' *Orfield v. Weindel*, 52 A.3d 275, 277 (Pa. Super. 2012) (citation omitted) . . . .").

decree to which effect cannot be given.'" The mootness doctrine provides:

> "The problems arise from events occurring after the lawsuit has gotten under way-changes in the facts or in the law-which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that 'an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"
>
> In this case, the facts have changed. Since the stop work order was issued more than five years ago there have been no physical changes to the building and it has remained unoccupied. Assuming *arguendo* that [the landlord] may have been entitled to occupancy permits when he first applied for them, [he] conceded that the building and space therein is presently uninhabitable. . . . Thus, at this juncture, issuance of the occupancy permits is moot.

*Battiste*, 94 A.3d at 424. *See also Commonwealth ex rel. Davis v. MacLean*, 136 A. 240, 240 (Pa. 1927) ("A discussion of the question whether mandamus is the proper remedy on the facts alleged [is out of place] * * * for the reason that the [application before us is in a] moot case.") (alterations in original).

In this case, it is undisputed that the underlying questions of law presented by the PFR are now moot based on the April 23, 2022 publication of the Rulemaking in the *Pennsylvania Bulletin* as the $CO_2$ Budget Trading Program. The question, then, is whether this case falls within one of the exceptions to the mootness doctrine.

Again, as this Court has explained:

> There are, however, limited exceptions to the mootness doctrine: "Although we generally will not decide moot cases, exceptions are made when (1) the conduct complained of is capable of repetition yet evading

11

review, or (2) involves questions important to the public interest, or (3) will cause one party to suffer some detriment without the Court's decision." *Clinkscale* [*v. Department of Public Welfare*, 101 A.3d 137, 139 (Pa. Cmwlth. 2014)] (*quoting* [*Philadelphia Public School Notebook v. School District of Philadelphia*], 49 A.3d 445, 448-49 (Pa. Cmwlth. 2012)). . . .

Where the first exception is concerned, an issue is capable of repetition but will likely evade review where "the duration of the challenged action [is] too short to be fully litigated prior to its cessation or expiration; and . . . there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Clinkscale*, 101 A.3d at 139-140 (alterations in original); [*Philadelphia Public School*] *Notebook*, 49 A.3d at 449. One such situation existed in *Philadelphia Public School Notebook*, where this Court found that the issues presented in the case were moot but would evade judicial review in the future.

* * *

This Court has [also] noted that the public importance exception is very rarely applied. *Harris v. Rendell*, 982 A.2d 1030, 1037 (Pa. Cmwlth. 2009), *aff'd*, [992 A.2d 121 (Pa. 2010)]. "It is only in very rare cases where exceptional circumstances exist or where matters or questions of great public importance are involved, that this [C]ourt ever decides moot questions." *Id.* (*quoting Wortex Mills, Inc. v. Textile Workers Union of Am*[*erica*, 85 A.2d 851, 857 (Pa. 1952))].

* * *

It is evident that the public importance exception is very rarely applied, and, where it is applied, the cases involve concrete harm to society. The examples noted earlier in this opinion applied the public importance exception to moot issues that concerned the loss of educational subsidies for public schools, impacts on citizens' ability to register to vote, public school students' rights to procedural due process before being suspended for a certain period, and [the Southeastern Pennsylvania

12

Transportation Authority's] ability to charge citizens higher prices for public transportation. [The a]ppellants' supposition that non-accessory signs may at some point cause a community to seem unattractive is not nearly concrete enough to warrant our application of the public importance exception. We, therefore, conclude that the issue of whether [the City of Philadelphia's Department of Licenses and Inspections] may grant a permit for the erection of a non-accessory sign pursuant to the [City's] Ordinance, which has reserved requirements for such signs, is not one of sufficient public importance for purposes of triggering an exception to the mootness doctrine.

*Driscoll v. Zoning Board of Adjustment of City of Philadelphia*, 201 A.3d 265, 269, 271 (Pa. Cmwlth. 2018) (footnotes omitted).

It is also undisputed that the instant matter raises legal questions of first impression. Should this remarkable issue of first impression require redress in the future, there is nothing to prevent an injured party from filing a PFR in this Court just as Secretary McDonnell has done in this case. In addition, there is absolutely no indication that Secretary McDonnell himself, or any subsequent Secretary, will ever be injured by the LRB Respondents in the same manner again. As a result, the first exception to the mootness doctrine does not apply because "the duration of the challenged action [is not] too short to be fully litigated prior to its cessation or expiration; and . . . there is [not] a reasonable expectation that the same complaining party will be subjected to the same action again." *Clinkscale*, 101 A.3d at 139-140 (alterations in original).

Likewise, there is no indication that the "very rarely applied" public importance exception is applicable herein. *Driscoll*, 201 A.3d at 269. Although the underlying legal issues are unquestionably important, there is no present "concrete harm to society" that will occur if this Court refuses to grant the requested relief regarding the Rulemaking's publication. *Id.* Finally, none of the parties will "suffer

some detriment" if we deem this matter to be moot. Instead, as noted above, should a party need the relief that the Secretary seeks in the PFR, the claims may be raised in a newly filed petition for review.

In short, any determination as to the legal questions that have been presented in this case would be advisory, and any judgment or decree that we issue in this matter between the named parties could not be given any effect. *Brouillette*. As a result, as the Court of first instance, we exercise our sound judicial discretion and decline to consider the moot claims that are present in the instant matter. *See id.* at 361 ("[A]ny order issued by this Court granting declaratory relief based on the purported violation of . . . the Pennsylvania Constitution and . . . [T]he Administrative Code[ of 1929[11]] would be merely advisory. Accordingly, the [preliminary objections] in the nature of a demurrer with respect to these claims . . . are sustained, and these claims are dismissed."). As a result, the PFR will be dismissed as moot, as well as the POs and ASR filed in relation thereto.[12]

---

[11] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§51-732.

[12] Nevertheless, it is clear that Intervenors' Counterclaims remain extant. *See, e.g.*, *Kaiser by Taylor v. Monitrend Investment Management, Inc.*, 672 A.2d 359, 362 (Pa. Cmwlth. 1996) ("A counterclaim is an independent action brought by the defendant in opposition to a plaintiff's claim. It is wholly independent of the transaction upon which the plaintiff's cause of action is based, and it represents the right of the defendant to obtain affirmative relief from the plaintiff.") (citations omitted); *see also* Pa.R.Civ.P. 232(b) ("A counterclaim may not be terminated, in whole or in part, by the defendant, except by discontinuance or voluntary nonsuit, and subject to conditions similar to those applicable to the plaintiff."); *Manna v. Manna* (Pa. Super., No. 1875 EDA 2021, filed October 28, 2022), slip op. at 8 ("Although Rule 232 is not directly applicable in the instant matter because [the a]ppellee's ejectment action was not discontinued or subject to a nonsuit, it provides support for the notion that a counterclaim may proceed on its own merits independent of the opposing party's suit. Additionally, Rule 232(b) demonstrates that a counterclaim is not automatically terminated when the plaintiff's suit is resolved but proceeds until it is discontinued or subject to a voluntary non-suit.").

Accordingly, the PFR filed in the above-captioned matter is dismissed as moot; in addition, based on the foregoing, the related POs and the ASR are also dismissed as moot.

_____
MICHAEL H. WOJCIK, Judge

Judge McCullough concurs in result only.
Judge Covey did not participate in the decision of this case.
Judge Fizzano Cannon did not participate in the decision of this case.
Judge Wallace did not participate in the decision of this case.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ramez Ziadeh, Acting Secretary :
of the Department of Environmental :
Protection and Acting Chairperson of :
the Environmental Quality Board, :
 :
     Petitioner :
 :
    v. : No. 41 M.D. 2022
 :
Pennsylvania Legislative Reference :
Bureau, Vincent C. DeLiberato, Jr., :
Director of the Legislative Reference :
Bureau, and Amy J. Mendelsohn, :
Director of the Pennsylvania Code :
and Bulletin, :
 :
     Respondents :

# **O R D E R**

AND NOW, this 19th day of January, 2023, the Petition for Review in the Nature of a Complaint for Permanent and Peremptory Mandamus and for Declaratory Relief filed by Ramez Ziadeh, Acting Secretary of the Department of Environmental Protection and Acting Chairperson of the Environmental Quality Board, is DISMISSED as moot; the related preliminary objections and application for summary relief filed by the parties and intervenors in the above-captioned matter are likewise dismissed as moot.

             _____
             MICHAEL H. WOJCIK, Judge