IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: General Election, 2024 | : |
| | : |
| | : |
| | : |
| Appeal of: Republican National | : |
| Committee and Donald J. Trump | : No. 1520 C.D. 2024 |
| 2024, Inc. | : Submitted: November 18, 2024 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                                        FILED:  November 22, 2024

This is an appeal by the Republican National Committee and Donald J. Trump 2024, Inc. (Campaign) from the order of the Court of Common Pleas of Philadelphia County (trial court), dated November 5, 2024, which denied the Campaign's request to prohibit certain badges worn by the Pennsylvania Democratic Party's (Party) poll watchers.  The Campaign argues wearing the badges while inside polling places was "electioneering" in violation of Section 1220(c) of the Pennsylvania Election Code (Election Code).[1]  After careful review, we reverse.

## BACKGROUND

On Election Day, November 5, 2024, counsel for the Campaign appeared at Philadelphia's Election Court and requested an order prohibiting badges worn by the

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3060(c).

Party's poll watchers inside polling places. The Campaign presented testimony from Robyn Lee Bird, a majority inspector for the 25th Ward, Division 3; Alicia Bogdon, a poll watcher; and Lisa Peng, a poll watcher. Generally, the evidence indicated poll watchers had entered polling places in Philadelphia wearing badges on lanyards with the words: "PA DEMS VOTER PROTECTION." Reproduced Record (R.R.) at 10a, 50a. The badges included a statement that they were "paid for by [the] Pennsylvania Democratic Party."[2] *Id.* at 10a. The Campaign's witnesses did not indicate any poll watchers spoke to voters while inside polling places.

Counsel for the Campaign contended wearing the badges while inside polling places was electioneering in violation of Section 1220(c), based on guidance by the Pennsylvania Department of State (Department). R.R. at 13a-14a. Counsel asserted she had asked the Party for a consent order prohibiting the badges in polling places, but the Party declined. *Id.* at 13a. Additionally, counsel clarified she was not asking the trial court to send law enforcement to make poll watchers remove the badges but was merely requesting an order similar to one allegedly issued in Allegheny County, "that says the poll watchers must remove any badges that have partisan materials on them in the polling place." *Id.* at 26a.

Counsel for the Party maintained wearing the poll watcher badges was not an attempt to persuade voters and, therefore, was not electioneering. R.R. at 15a-16a. Nonetheless, counsel explained the Party became aware of the dispute regarding the badges that morning and already reminded poll watchers "that any badge . . . go[es] inside of your shirt or out of view if you need to walk into the polling location." *Id.*

_____

[2] A photograph depicting a man wearing one of the badges is attached to the order on appeal. The photograph shows the words "VOTER PROTECTION" in the middle of the badge, with the words "PA DEMS" written above in much smaller print. The statement that the Party paid for the badges is not legible, but the photograph shows what appears to be blurry print at the bottom of the badge that presumably includes this language.

at 16a. Counsel argued the order the Campaign was requesting would be disruptive and difficult to enforce because it would "put an onus on poll watchers . . . having to abide by a court order that we don't even know who would serve them." *Id.* at 18a, 28a-29a

Moreover, the Party presented testimony from Adam Bonin, Esquire (Bonin), an attorney who was apparently assisting the Party with its election efforts. The trial court limited Bonin's testimony to the size of the print on the badges, reasoning this question "might be dispositive." R.R. at 35a. Bonin testified the words "PA DEMS" were printed in a very small font, explaining: "It's probably less than a quarter of an inch. My index finger can't be more than a third of an inch wide and it's way smaller than that." *Id.* at 37a.

At the conclusion of the hearing, the trial court announced it would deny the Campaign's request. The trial court reasoned the Campaign had not objected to the words "VOTER PROTECTION" on the poll watcher badges, and "PA DEMS" was printed in small font, so that "no one, unless they are going up to the watcher, leaning down and trying to read their badge is going to see what it says." R.R. at 46a. The statement indicating the Party paid for the badges was in smaller font, the trial court observed, and would be illegible "even close up." *Id.* Additionally, the trial court reasoned it had not heard any evidence that a voter could see or saw the badges, or that a poll watcher approached a voter in an "inappropriate way." *Id.* at 47a. The trial court concluded the badges were not causing harm and that issuing an order "at this point in the evening . . . would itself cause harm."[3] *Id.* at 48a. The Campaign timely appealed.

---

[3] The trial court's opinion includes substantively the same reasoning. The trial court contends the Campaign failed to prove any voter inside a polling place could or did read the poll watcher badges. **(Footnote continued on next page…)**

## DISCUSSION

The Campaign's appeal presents an issue of statutory interpretation. This is a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *In re Benkoski*, 943 A.2d 212, 215 n.2 (Pa. 2007). In other words, we do not defer to the trial court's interpretation of the statute when reaching our decision, and we may consider the entire record on appeal. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1082 (Pa. 2012). The Court focuses its analysis on the plain language of the statute, with the goal of giving effect to the General Assembly's intent. *Stadium Casino RE, LLC v. Pa. Gaming Control Bd.*, 318 A.3d 789, 798 (Pa. 2024).

### A. Parties' Arguments

According to the Campaign, wearing the Party's badges while inside polling places was electioneering in violation of Section 1220(c). The Campaign directs our attention to guidance from the Department, issued about six weeks before Election Day, which explained poll watchers should not wear apparel or accessories showing support for a candidate or party. Moreover, the Campaign rejects the assertion that the badges were permissible because the print on them was small and may not have been legible to voters. The Department's guidance created a bright-line rule against electioneering, the Campaign argues, and focusing on print size and voter perception would result in "uncertainty, chaos, confusion, and circular causality." Campaign's Br. at 12, 17. The Campaign emphasizes the statement on the badges indicating the Party paid for them. The Campaign contends this language is required for political advertising, which demonstrates the purpose of the badges was to promote the Party.

---

Trial Ct. Op., 11/14/24, at 7-9. Further, the trial court contends the Campaign's appeal should be dismissed as moot. *Id.* at 4-5.

4

Finally, the Campaign maintains its appeal is not moot because the dispute is capable of repetition in future elections.

The Party defends the badges by asserting they "did not contain any language advocating for the [P]arty or any candidate" but merely identified those wearing the badges as poll watchers. Party's Br. at 4-5. The Party argues there was no evidence any poll watchers approached voters or attempted to solicit votes. Further, the Party argues the print on the badges was small, and there was no evidence the badges were legible to voters. The Campaign did not seek to prohibit the badges until late in the afternoon on Election Day, the Party maintains, which rendered its request untimely and potentially disruptive. In addition, the Party argues this appeal is moot because the polls are closed and the election is over. The Party contends there is no evidence it intends to use the same or similar badges in future elections, and challenges to any future badges can be brought in a timelier manner.[4]

**B. Mootness**

We first consider whether this appeal is moot. The Court cannot decide moot or abstract questions. *Battiste v. Borough of E. McKeesport*, 94 A.3d 418, 424 (Pa. Cmwlth. 2014). A case becomes moot if a "change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect." *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014). Even when a case is moot, we may still reach the merits of the dispute if it is capable of repetition yet likely to evade judicial review. *Gray v. Phila. Dist. Att'y's Off.*, 311 A.3d 1230, 1236 (Pa. Cmwlth. 2024). This exception to the mootness doctrine applies when "there is a reasonable expectation that the same complaining party will be subjected to the same action again" and "the

---

[4] The Philadelphia County Board of Elections has informed the Court it will not be filing a brief in this matter.

5

duration of the challenged action is too short to be fully litigated prior to its cessation or expiration." *Id.* at 1238.

The Campaign's appeal is technically moot. Election Day is over, and we can no longer enter an order permitting or prohibiting the poll watcher badges while they are still in use. Nonetheless, this dispute is capable of repetition. It is reasonable to expect a political party will provide poll watchers with the same or similar badges in future elections. Any challenge to the badges is also likely to evade judicial review because Election Day will always have ended by the time it reaches an appellate court. Thus, this dispute falls within the exception to the mootness doctrine, and we may consider the merits of the Campaign's appeal.

## C. Section 1220(c)

Section 1220 of the Election Code provides a series of regulations in force at polling places on Election Day. These include Section 1220(c), which instructs that "[n]o person, when within the polling place, shall electioneer or solicit votes for any political party, political body or candidate, nor shall any written or printed matter be posted up within the said room, except as required by this act." 25 P.S. § 3060(c). The Election Codes does not define the term "electioneer." As a result, we may turn to dictionaries to discern the statute's meaning. *Wright v. Lower Salford Twp. Mun. Police Pension Fund*, 136 A.3d 1085, 1090 (Pa. Cmwlth. 2016). "Electioneering" means "[t]he practice or an instance of trying, us[ually] within established rules, to influence the outcome of election by distributing pamphlets, making speeches, door-to-door canvassing, etc." Black's Law Dictionary 655 (11th ed. 2019). Similarly, to "electioneer" means "tak[ing] an active part in an election; [specifically,] to work for the election of a candidate or party." Merriam-Webster's Collegiate Dictionary 371 (10th ed. 1997).

6

The poll watcher badges at issue included the Party's nickname, "PA DEMS," the words "VOTER PROTECTION," and language indicating the Party paid for the badges. The Election Code provides poll watchers are identified by certificates they receive from the county board of elections and does not contemplate poll watcher badges. *See* Section 417(b) of the Election Code, 25 P.S. § 2687(b). By wearing the badges while inside polling places, the Party's poll watchers showed association with, and encouraged voters to cast ballots for, the Party and its candidates. This was impermissible electioneering under Section 1220(c).

Although we conclude that allowing poll watchers to wear a political party's name, such as "PA DEMS," while inside a polling place is enough to violate Section 1220(c), two other factors weigh in favor of our decision. First, the badges included language applicable to political advertising, indicating the Party paid for them. This demonstrates the Party understood the badges to promote its interests and serve an electioneering purpose. *See* Section 1638(a) of the Election Code,[5] 25 P.S. § 3258(a) (generally, "any person [who] makes an expenditure for the purpose of financing communications expressly advocating the election or defeat of a candidate" must state the communications were authorized by the candidate or, if unauthorized, state who paid for the communications).

Second, the badges did not describe individuals wearing them as poll watchers but as "VOTER PROTECTION." Protecting voters is an admirable objective, which might persuade the public to vote for the Party and its candidates. Alternatively, the badges could imply to voters that opposing political parties or candidates pose a risk of harm that warrants the Party's "protection." This is a partisan message that serves no purpose other than electioneering. Indeed, the Election Code does not depict poll

---

[5] Added by the Act of Oct. 4, 1978, P.L. 893.

7

watchers as "protecting" voters but empowers them to challenge voter qualifications and review records. 25 P.S. § 2687(b).

We reject the Party's argument that the badges were permissible because there was no evidence of poll watchers approaching voters. Section 1220(c) prohibits the posting of "any written or printed matter," 25 P.S. § 3060(c), which indicates the General Assembly intended to prohibit all forms of electioneering, whether written or verbal. Furthermore, we agree with the Campaign that the size of the print on the badges is not determinative. The statutory language prohibits "any" such messaging from being displayed in a polling place without reference to print size. Focusing on how easily any given voter could read the message, when not all voters have the same vision, would create a subjective standard without support in the Election Code. The General Assembly understandably created a bright-line rule to govern under these circumstances. This bright-line rule makes sense.[6]

There is no merit to the argument that the Campaign's request to prohibit the badges was untimely. The Party insists this request occurred "with the polls soon to close . . . in the waning minutes of the election." Party's Br. at 2. However, the trial court explains the Campaign made its request at approximately 5:00 p.m. Trial Ct. Op., 11/14/24, at 1. Polls were not going to close until three hours later, at 8:00 p.m., and voters standing in line at 8:00 p.m. would be allowed to vote. Violations of the Election Code are not permissible simply because they might continue for only three

---

[6] The bright-line rule avoids the risk of overly subjective decisions which could trigger equal protection concerns based on inconsistent treatment of voters. What influences or intimidates one person may not have the same effect on someone else, and therefore, all political messaging is simply forbidden. The rule also recognizes the need for a court to manage its docket on an important, busy day so it is not resolving whether voters approached a poll worker and read the electioneering message and whether, in the judge's opinion, certain words were of small enough font size. Whether a voter read the message and whether the font size is small simply are not relevant.

8

more hours or impact a limited number of voters.[7] *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004) (courts cannot ignore "so-called technicalities of the Election Code" that are needed to preserve the sanctity of the ballot).

As a final matter, to the extent Section 1220(c)'s prohibition on electioneering in polling places is ambiguous, Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(8), allows us to consider administrative interpretations when discerning the General Assembly's intent. The Department issued "Guidance on Rules in Effect at the Polling Place on Election Day" (Guidance)[8] on September 23, 2024. Based on Section 1220, the Guidance states poll watchers should "refrain from wearing partisan apparel or buttons." Guidance at 7. In the same paragraph, the Guidance states that "[n]o signs or other campaign material should be present in the polling place."[9] *Id.* This further supports our conclusion that wearing the Party's poll watcher badges inside polling places was impermissible electioneering. Because a poll watcher cannot wear a political button, then certainly a badge, which

---

[7] It is noteworthy the Party's counsel admitted being aware of the issue and attempting to remedy it "this morning," which indicates the Campaign did not delay in bringing the dispute to the Party's attention. R.R. at 16a-17a. Counsel for the Campaign indicated she had been working on the issue "all day" and attempted to resolve it informally before seeking relief in the trial court. *Id.* at 25a-26a.

[8] Pennsylvania Department of State, *Guidance on Rules in Effect at the Polling Place on Election Day, Version 2.0*, https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2024-dos-guidance-rules-atthepollingplace-on-electionday-2.0.pdf (last visited Nov. 14, 2024).

[9] The Guidance further includes a paragraph relying on Section 417, which indicates poll watchers "may not engage in electioneering while inside the polling place, which includes wearing apparel or accessories that signify support for a candidate or party." Guidance at 5.

is more formal and carries a greater potential to influence or intimidate voters, should be forbidden.

## CONCLUSION

For the foregoing reasons, the Campaign's appeal is technically moot but falls within an exception to the mootness doctrine because it is capable of repetition but likely to evade judicial review. Turning to the merits of the Campaign's appeal, the trial court erred by permitting poll watchers to wear the badges at issue inside polling places. The presence of poll watchers wearing the badges violated Section 1220(c)'s prohibition of electioneering. Thus, we reverse the trial court's November 5, 2024 order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: General Election, 2024      :
      :
      :
      :
Appeal of: Republican National      :
Committee and Donald J. Trump      : No. 1520 C.D. 2024
2024, Inc.      :

# **O R D E R**

**AND NOW**, this 22nd day of November 2024, the order of the Court of Common Pleas of Philadelphia County, dated November 5, 2024, is **REVERSED**.

_____
STACY WALLACE, Judge