IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Rokita, Jr.,                          :
                    Petitioner             :
                                           :
        v.                                 :    No. 533 M.D. 2022
                                           :
The Pennsylvania Department of             :    Submitted: June 4, 2024
Corrections,                               :
                    Respondent             :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: August 20, 2024


          Before the Court are the preliminary objections (POs) of the Pennsylvania Department of Corrections (DOC) to the amended petition for review (Petition) filed by Mark Rokita, Jr. (Rokita), *pro se*, in our original jurisdiction seeking review of a misconduct charge issued against him and requesting that a new misconduct hearing be granted. DOC demurs[1] to the Petition, asserting this Court's lack of jurisdiction and

---

[1] "The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible." *Stilp v. General Assembly*, 974 A.2d 491, 494 (Pa. 2009). When ruling on preliminary objections, the Court must accept all well-pleaded factual allegations as true, along with any inferences reasonably deduced therefrom. *Neely v. Department of Corrections*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003). The Court is not bound, however, "by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). Preliminary objections should not be sustained unless it "appear[s] with certainty that the law will not permit recovery and any doubt should be resolved by a refusal to sustain them." *Neely*, 838 A.2d at 19 n.4.

Rokita's failure to state a claim. For the reasons that follow, we dismiss the Petition as moot.

## 1. Averments of the Petition

Rokita's Petition avers the following. Rokita suffers from a substance use disorder and had qualified for treatment. While in the medical department on September 13, 2022, he was given a drug test, which was inconclusive. When the prison nurse asked him when he last used drugs, he responded that he had used drugs "a lil over a week ago." (Petition, ¶¶ 1-2.) The nurse filed a misconduct report, indicating that Rokita had admitted to using drugs one week ago. *Id.*, ¶ 2.

At his misconduct hearing, Rokita attempted to explain that the drug test was inconclusive, but the hearing examiner told him that, because he already admitted to using drugs, if he did not plead guilty, he would be sent to solitary confinement. *Id.*, ¶ 3. Rokita pleaded guilty to the misconduct charge to avoid solitary confinement. *Id.*,

Rokita appealed his guilty plea to the Program Review Committee (PRC). He explained that the drug test was inconclusive and that, although he "did admit to using," he was "certain" his urine was "clean" and that a drug test performed three days later was negative. *Id.*, ¶ 4. He also argued that he was forced to plead guilty and that he should not have been punished for something he told the medical staff during medical treatment. Because his written appeal exceeded the line limit and number of exhibits allowed, the PRC rejected his appeal but allowed Rokita to file a new appeal within five days. *Id.*, ¶ 6. The rejection was dated September 22, 2022. Rokita received the PRC rejection on September 30, 2022, which was beyond the five-day appeal period. He tried to file a new appeal, but it was rejected again because it was untimely. *Id.* Rokita appealed to the Prison Superintendent, who found no errors in the PRC's review. *Id.*, ¶ 7. Rokita then appealed to the Office of Chief Hearing

Examiner who determined that no errors had occurred before the PRC or Superintendent. *Id.*, ¶ 8.

After he was deemed guilty for the misconduct, Rokita received a notice that he could not participate in his paralegal studies at Blackstone Career Institute (Blackstone) for a period of six months. The mailroom was told not to accept any mail or educational materials addressed to Rokita from Blackstone. *Id.*, ¶¶ 9-12. After the six-month educational suspension was over, he completed the course but had to pay $30 in additional mailing fees to receive his books and homework and had to "hurry in order to complete his assignments and had to re-adjust his mentality and thinking to get back into the curriculum." *Id.*, ¶ 13. Rokita had been granted parole and was due to be released in a month, and his parole was rescinded because of his drug use. *Id.*, ¶ 19.

Rokita asserts that he was denied due process when (1) the hearing examiner threatened him with solitary confinement if he did not plead guilty, *id.*, ¶ 15; (2) he was denied the opportunity to request witnesses and a new urine test, *id.*, ¶¶ 15-16; (3) his appeal to the PRC was erroneously deemed untimely, *id.*, ¶ 17; (4) he was "refused his education materials that he paid for," *id.*, ¶ 20; and (5) the nurse used his admission made during medical treatment as the basis of the misconduct report, *id.*, ¶ 14. He claims that as a result of this inadequate due process, he incurred $30 in mailing fees, he got "off track with educating himself," his parole was rescinded, and he lost his rights to medical privacy under the Fourteenth Amendment, U.S. Const. amend. XIV, and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104–191, 110 Stat.1936 (codified as amended in scattered sections of 18, 26, 29 and 42 U.S.C.). *Id.*, ¶¶ 13-14, 19. As relief, Rokita seeks an order directing DOC

to afford him another misconduct hearing and the opportunity to submit another drug test.  (Petition at 5.)

## 2.  Mootness

At the time he filed his Petition, Rokita was an inmate incarcerated within the Commonwealth's prison system.  On July 12, 2024, while this Petition was pending, Rokita notified this Court that he was schedule to be released from incarceration on July 16, 2024.

As a preliminary matter, we address whether any of his claims are now moot based on his released status.  *Battiste v. Borough of East McKeesport*, 94 A.3d 418, 424 (Pa. Cmwlth. 2014) (holding Court may *sua sponte* raise the issue of mootness).

"[W]here there are intervening changes in the factual circumstances of a case which eliminate an actual controversy and make it impossible to grant the requested relief, the legal question is rendered moot . . . ."  *Johnston v. Lehman*, 676 A.2d 1287, 1289 (Pa. Cmwlth. 1996).  "Under the mootness doctrine, an actual case or controversy must exist at all stages of review, not just when the [petition for review] is filed."  *Finn v. Rendell*, 990 A.2d 100, 104-05 (Pa. Cmwlth. 2010).  "The existence of a case or controversy requires a real and not a hypothetical legal controversy and one that affects another in a concrete manner so as to provide a factual predicate for reasoned adjudication . . . ."  *Id.* at 105 (internal citation and quotation omitted).  As our Pennsylvania Supreme Court explained:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law— which allegedly deprive the litigant of the necessary stake in the outcome.

4

*Pap's A.M. v. City of Erie*, 812 A.2d 591, 599-600 (Pa. 2002) (citation omitted). Absent an actual controversy, any opinion rendered would be purely advisory, which is not permitted. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005); *Buehl v. Beard*, 54 A.3d 412, 419 (Pa. Cmwlth. 2012), *aff'd*, 91 A.3d 100 (Pa. 2014).

Because Rokita has been released from prison as of July 16, 2024, his due process claims seeking an order directing DOC to afford him another misconduct hearing and the opportunity to submit another drug test are now moot. *See Harris v. Rendell*, 982 A.2d 1030, 1036 (Pa. Cmwlth. 2009), *aff'd*, 992 A.2d 121 (Pa. 2010) (holding an inmates' claims for declaratory relief became moot upon their release on parole or re-parole); *see also In re Gross*, 382 A.2d 116, 120 (Pa. 1978) (holding "[c]onstitutional questions are not to be dealt with abstractly"). Because Rokita is no longer incarcerated, there is no ongoing case or controversy and any judgment entered affording him another misconduct hearing or the opportunity to submit another drug test would be without effect. We, therefore, dismiss Rokita's entire Petition as moot.[2]

---

[2] Even if not deemed to be moot, we would sustain DOC's POs and dismiss the Petition because Rokita has failed to allege a deprivation of any legally cognizable interest that would warrant this Court's review.

To maintain a due process challenge, a party must initially establish the deprivation of a protected liberty or property interest. If and only if the party establishes the deprivation of a legally cognizable liberty interest, will the Court consider what type of procedural mechanism is required to fulfill due process. *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017). A deprivation of a legally cognizable liberty interest "occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Feliciano v. Department of Corrections*, 250 A.3d 1269, 1275 (Pa. Cmwlth. 2021), *aff'd*, 283 A.3d 196 (Pa. 2022). If a petitioner cannot show such a violation, the disciplinary decision is "not an adjudication subject to this Court's review." *Id.* (citing *Bronson v. Central Office Review Committee*, 721 A.2d 357, 359 (Pa. 1998)).

**Parole**

Rokita challenges the denial of his parole and the additional time spent incarcerated as a deprivation of his liberty interest. This argument has been rejected routinely.

**(Footnote continued on next page…)**

5

Parole is nothing more than a possibility, and, when granted, it is nothing more than a favor granted upon a prisoner by the state as a matter of grace and mercy shown by the Commonwealth to a convict who has demonstrated a probability of his ability to function as a law abiding citizen in society. *Ughbanks v. Armstrong*, 208 U.S. 481 . . . (1908); *Keastead v.* [*Pennsylvania*] *Board of Probation and Parole*, . . . 514 A.2d 265 ([Pa. Cmwlth.] 1986). Because it is a favor, a prisoner has neither an absolute right to parole nor a liberty interest in receiving parole. [*Keastead*, 514 A.2d at 267]; *see also Krantz v.* [*Pennsylvania*] *Board of Probation and Parole*, . . . 483 A.2d 1044 ([Pa. Cmwlth.] 1984). In other words, in Pennsylvania, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his or her maximum term. *Tubbs v.* [*Pennsylvania*] *Board of Probation and Parole*, . . . 620 A.2d 584 ([Pa. Cmwlth.] 1993). . . .

*Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997). *See also Myers v. Ridge*, 712 A.2d 791 (Pa. Cmwlth. 1998). Accordingly, because Rokita has no liberty interest in receiving parole, he failed to establish the deprivation of a protected interest.

### Delay in Completing Blackstone Course

Next, Rokita asserts that he has a liberty interest under the First Amendment, U.S. Const. amend. I, in keeping his education at Blackstone "on track." (Petition, ¶ 20.) He complains that he "had to play catch-up and re-discover the desire to educate himself after the prison intervened." (Rokita's Br. at 4.)

Rokita has cited no authority for the proposition that a prisoner has a protected liberty interest in completing his outside paralegal courses within any certain amount of time. He has not alleged any facts that the six-month delay in completing his paralegal course affected his liberty interests. He does not allege that he was unable to complete the course, but only that he had to "hurry" to do so. (Petition, ¶ 13.)

In general, access to education is not guaranteed under the United States Constitution and is not, therefore, considered to be a fundamental right or liberty. *Lisa H. v. State Board of Education*, 447 A.2d 669, 672-73 (Pa. Cmwlth. 1982), *aff'd per curiam*, 467 A.2d 1127 (Pa. 1983) (citing *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973)). Pennsylvania courts have held that prisoners enjoy no constitutional right to educational opportunities per se. *See e.g. Hayes v. Cuyler*, 475 F. Supp. 1347 (E.D. Pa. 1979). Recently, in *Spada v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 454 C.D. 2021, filed January 20, 2022) (unreported), we considered whether an inmate had a constitutional right to take the paralegal certificate course offered through Blackstone, the same course at issue here. In *Spada*, Zachary Spada (Spada), an inmate at the State Correctional Institution at Houtzdale, sought to enroll in a post-secondary paralegal certificate course offered through Blackstone. DOC's policy limited inmates' access to post-secondary educational courses to those with clean disciplinary records. Spada's application was denied because his record included three disciplinary misconduct entries within the six months before his application. Spada

**(Footnote continued on next page…)**

6

filed an action against DOC, arguing that DOC's refusal to allow him to participate in the paralegal correspondence course or to receive its materials through prison mail violated his First Amendment rights. The trial court rejected Spada's arguments, stating that access to post-secondary education is not a fundamental or constitutional right under either the Pennsylvania or United States Constitutions, citing *Lisa H*. On appeal, we affirmed, concluding that Spada had neither a constitutional right nor a statutory entitlement to access that level of educational offerings. The natural extension of our holding in *Spada* applies here and supports the conclusion that Rokita had no constitutional right to complete the Blackstone course with no interruption.

### Medical Privacy

Lastly, Rokita asserts a right of privacy under the Fourteenth Amendment and HIPAA in his admission to the prison nurse of his illegal drug use. Two types of interests identified by the United States (U.S.) Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment include the interest in "independence in making certain kinds of important decisions," such as those dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977), and the interest in "avoiding disclosure of personal matters." *Id.* at 599, 603-04.

The circumstances here did not implicate Rokita's reasonable expectation of privacy. It is well known that a prisoner's reasonable expectations of privacy are limited. In *Hudson v. Palmer*, the U.S. Supreme Court held that a prison inmate lacked a reasonable expectation of privacy in his prison cell. 468 U.S. 517, 525-26 (1984). For example, the Court found that "any subjective expectation of privacy that a prisoner might have in his prison cell" was not one that society would recognize as legitimate or reasonable. *Id.* at 526-27. Balancing the prisoner's interest in privacy against "the interest of society in the security of its penal institutions," the Court held that any subjective desire for privacy was "incompatible" with the need to "ensure institutional security and internal order." *Id.* at 527-28; *see also id.* ("[l]oss of freedom of choice and privacy are inherent incidents of confinement"). The limits on an inmate's expectations of privacy are particularly strong where the information he seeks to protect relates to the institutional safety of the prison. *Hudson*, 468 U.S. at 526.

Applying this precedent here, as an inmate in the prison medical center, Rokita lacked a reasonable expectation of privacy in his concession to the nurse of his illegal drug use. DOC has a reasonable need to know if an inmate is using drugs. *Niemic v. Maloney*, 448 F. Supp. 2d 270 (D. Mass. 2006). Proven drug use amounts to a threat to security that justifies discipline. Therefore, DOC has a legitimate interest in whether inmates are using illegal drugs. This is precisely the reason why prisons require drug testing. Moreover, Rokita's argument is the equivalent to arguing that a positive result of a drug test may not be used to issue a misconduct because it is private medical information. For these reasons, disclosure of his drug use as the basis of a misconduct did not implicate a Fourteenth Amendment right to privacy.

As for his argument regarding HIPAA, Rokita has failed to identify a protected interest. "HIPAA is not a codification of a constitutional right to privacy." *Castillo v. O'Haine* (M.D. Pa., No. 1:22-CV-00417, filed Dec. 1, 2023). HIPAA does not confer rights on individuals. Rather, it

**(Footnote continued on next page…)**

_____
PATRICIA A. McCULLOUGH, Judge

---

provides national standards for the protection of personal health information. *See* 55 Pa. Code § 6000. As the United States District Court of the Eastern District of Pennsylvania explained,

> HIPAA does not confer rights on a specific class of persons, but rather focuses on the persons that are regulated by the statute: those with access to protected medical information. See 42 U.S.C. § 1320d–1. The statutory text contains prohibitions rather than entitlements. *Wisniewski* [*v. Rodale, Inc*.], 510 F.3d [294,] 302 [3d Cir. 2007]. Therefore, the Court does not find that Congress intended to create personal rights.

*Pik v. University of Pennsylvania* (E.D. Pa., No. Civ.A.08-5164, filed Oct. 7, 2010). Therefore, Rokita could not succeed on the argument that admitting to the prison nurse that he had used illegal drugs amounted to asserting his rights under HIPAA. Accordingly, if this case was not moot, we would find that Rokita has failed to establish a deprivation of any protected liberty or property interest, and we would decline to review the matter further.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Rokita, Jr.,                        :
                    Petitioner          :
                                         :
        v.                               :    No. 533 M.D. 2022
                                         :
The PA Department of Corrections,        :
                    Respondent           :

## *ORDER*

AND NOW, this 20th day of August, 2024, the amended petition for review filed by Mark Rokita, Jr. in the above-captioned matter is DISMISSED as moot.

_____
PATRICIA A. McCULLOUGH, Judge